# WETUMPKA & COOSA RAIL ROAD COMPANY, v. BINGHAM.

1. An appeal bond from the judgment of a justice of the peace, which does not show that the judgment was rendered against the defendant, what was the amount of the judgment, or to what court the appeal was taken, is a nullity, and will not authorise a judgment to be rendered against the sureties, though the defendant to the judgment may voluntarily appear, and judgment be rendered against him.

2. A bill drawn by the President of a Rail Road Company on the treasurer of the Company, payable on demand, is, when dishonored, properly sued on as a bill of exchange, and to recover on it in a suit against the company, presentment for payment, and notice of the dishonor must be proved, or an excuse for failing to do so, shewn.

3. In such a case, if it be doubtful from the face of the bill, whether it was drawn by one in his private character, or as agent of the corporation, and by its authority, parol evidence is admissible to show the true nature of the transaction.

4. If a corporation is empowered by an amendment to its charter, to draw bills of exchange, and afterwards draws a bill; an acceptance of the amended charter will be presumed without showing any direct act of acceptance by the corporation or its authorised agents.

5. A consolidation of several appeals for money demands, between the same parties, will authorise the court to render a judgment for the entire amount against the sureties in the several appeal bonds, if the same persons are sureties in all the bonds.

Error to the circuit court of Autauga.

This proceeding consisted of eight cases, originally commenced by the defendant in error, before a justice of the peace, against the company, to recover the amount of a draft of the following tenor.

Wetumpka and Coosa Rail Road, ⎞
President's Office, April 30, 1838. ⎠

Dr. A. Crenshaw—Sir, On demand, pay William R. Bingham, or bearer, forty-five dollars, value received, and charge to account of your,

Obedient servant,

J. D. WILLIAMS, Pres't.

To A. Crenshaw, Treasurer.

The justice having rendered judgments against the company, the latter appealed, when the cases were sent up with the following bond in each case.

The State of Alabama, ⎞ Appeal to Circuit Court.
Autauga county. ⎠

Know all men by these presents, that we, E. Burrows, J. W. Pryor and L. P. Saxon, are held and firmly bound unto William R. Bingham, his heirs and assigns, in the sum of ninety-six dollars, for the true payment whereof we bind ourselves, our heirs, executors and administrators, jointly and severally, firmly by these presents: signed, sealed and dated 11th July, 1838.

The condition of the above obligation is such, that whereas, William R. Bingham, hath instituted a suit against the President, Directors and Company before James H. Gorman, a justice of the peace of said county; and whereas, judgment hath been rendered upon the said suit against the said President, Directors and Company; and whereas, the said President, Directors and Company, are desirous of entering an appeal in said suit. Now, if the said President, Directors and Company shall prosecute said appeal with effect, and in case he be cast therein, shall pay and satisfy the condemnation of the court, then the above obligation to be void, else to remain in full force.

Signed, sealed and delivered ⎞
in the presence of ⎠

J. H. GORMAN, J. P.

E. BURROWS, (seal.)
J. W. PRYOR, (seal.)
L. P. SAXON, (seal.)

The eight cases were consolidated by consent, and a declaration filed against the company in the usual form, as in cases of inland bills of exchange for non-acceptance, to which the defendant demurred, and which was overruled by the court.

Upon the trial of the issue before the jury, the plaintiff read the orders drawn in favor of the plaintiff, on the face of which was indorsed, " noted for non-acceptance, May 10th 1838; J. H. Gorman, J. P." It was also provèd by one Beecher, that at the time these drafts were drawn, he was the secretary of the Rail Road Company; that at the same time, J. D. Williams, was its president, and A. Crenshaw its treasurer. A resolution from the records of the company was also read, passed by the board of directors, by which the account of the plaintiff, against the company, was allowed as just, and the president directed to give drafts for the amount to the plaintiff on the treasurer.

The defendant objected to the reading of the drafts to the jury, unless it was shown that an amendment, which had been made to the charter, on the 9th January, 1836, had been accepted by the company. And also, because there was no proof that the drafts had been presented to Crenshaw, and Williams notified of his refusal to accept; and further, because these drafts did not purport to be the debts of the company, but the individual debts of Williams, and if the contracts of the company, are not bills of exchange.

The court overruled all these objections, and the jury rendered a verdict for the plaintiff. The sureties to the appeal bonds then objected to a judgment being rendered against them. 1. Because the bonds are not the bonds of the Rail Roard Company. 2. Because the order to consolidate the suits did not consolidate the bonds. 3. Because the bonds are void for uncertainty. The court overruled these objections and rendered judgment against the Rail Road Company, and the sureties to the appeal bonds, to all which the defendants excepted.

The errors assigned are the matters set forth in the bill of exceptions, and the rendition of judgment against the sureties in the appeal bonds.

PRYOR, for plaintiff in error, contended that the demurrer to the declaration should have been sustained, because there was no express grant of power in the original charter to draw bills of exchange, nor was such a power necessary to enable it to fulfil the purpose of its creation. [2 Kent's Com. 298; 3 Wend. 573; 3 B. and A. 1; 5 Cow. 560; 10 B. and C. 128; 8 G. and J. 248.]

The declaration is bad. 1st, because it does not contain an aver-

ment that the president was authorised to draw bills for the company. 2. The bill declared on is not the bill of the company, but of J. D. Williams the drawer. 3. If the bill is the bill of the company, it is drawn upon itself, and is in effect, a promissory note, and should have been declared on according to its legal effect; [10 B. and C. 128.] 4. The declaration does not aver a presentment to the drawee before suit brought. 5. Damages is a penalty, and no officer or agent of a corporation can do any act which will subject it to a penalty; [13 Pick. 291.]

If the plaintiff intended to rely on the amended charter, authorizing the company to draw bills, he should have proved its acceptance by the company. [9 G. and J. 365.]

The testimony of Beecher, if it proved any thing, showed that these were not bills of exchange, but that it was merely a mode of liquidating the account. [2 Greenleaf, 121.]

The order of consolidation, did not work a consolidation of the bonds. The consent to consolidate could affect those only who were in court at the time, but the sureties to the bonds were not parties at that time. The consolidation made a material alteration in the contract of the sureties, and therefore discharged them. [4 W. C. C. R. 26; 15 Peters' 187.]

The bonds were void for patent ambiguities, and no judgment could be rendered upon them. It does not appear when judgment was rendered—for what amount—against whom—or to what court the appeal was taken.

If judgment could be rendered against the company, it could not against the sureties, as they are not by the bond, or in any other manner, connected with the proceedings.

W. COCHRAN, *contra.* The proof shows that the bills were drawn to pay a debt of the company by order of the directors, which fact it was competent for the plaintiff to show by proof *aliunde.* [2 Ala. Rep. 718.] But the amended charter expressly authorised the company to draw bills, and if it has exercised this power, it will be presumed to be under the charter as amended.

Great indulgence has always been shown by this court to proceedings before a justice of the peace, and as the company appeared in the court below, it is too late now to contend that these

bonds were not the bonds of the company, as in no other way could the cause get into the circuit court.

The consolidation of the suits produced no change in the contract of the sureties, but as it reduced the costs, was for their benefit.

ORMOND, J.—It is very clear, we think, that the judgment rendered against the sureties of the Rail Road Company, cannot be sustained.

The statute, [Aik. Dig. 260,] provides that a party against whom a judgment is rendered by a justice of the peace, may prosecute an appeal to the circuit court, upon giving bond with surety, and that if the judgment of the justice is affirmed, judgment shall be entered against the surety, as well as the principal, and execution issue against both or either.

The Rail Road Company having appeared and pleaded in the circuit court, may be considered as having waived the question of jurisdiction, and admitted that it was rightfully in court, but this waiver could only extend to those who were then parties in court. The right to render judgment against the sureties, though a consequence of the judgment against the principal, is derived solely from the appeal bond, which when sent up by the justice, is by the statute made *prima facie* evidence of the facts stated in it, and that the persons whose names are signed to it, did in fact execute it as their bond. Upon this evidence the court acts summarily and renders judgment against them jointly, with the principal. But it is too clear for argument, that the court must have at least *prima facie* authority for rendering a judgment against persons who have no opportunity of making defence. The court must have at least the *ex parte* evidence afforded by the production of a bond; that they have consented that if a certain judgment is affirmed against their principal, it may be also rendered against them. But the appeal bond, which the court acted on, does not show that any judgment was ever rendered against this corporation; or, if one was ever rendered against any one, what was its amount, or to what court the appeal was taken. As an appeal bond therefore, this paper was an absolute nullity, and could not authorize the rendition of a judgment against them. The judgment must be for this cause, reversed and remanded. It is, however, pro-

per, that the other important questions made in the cause, should be considered as a guide for the future decision of the cause.

The counsel for the plaintiff in error, contended that under the charter, as originally granted, the company had not power to draw bills of exchange, and although he conceded that the power was given by the amendment to the charter, yet he insisted that it must be shown that the corporation had accepted it.

Waiving the enquiry whether a legislative grant enlarging the power of the corporation, and increasing its facilities for the transaction of business, must not be presumed to be made at the instance of the corporation, we think the exercise of the power by the corporation, is conclusive to show that the grant was accepted. The exercise of any corporate function absolutely granted to the corporation by law is when done, referred to the charter of incorporation for its support and sanction, and we are unable to perceive any difference in a grant of power in an original or amended charter. In either case, as the exercise of the power is justified by the charter authorising the act to be done, the corporation is estopped from denying its power to do the act.

In the United States v. Dandridge, [12 Wheaton, 64,] the court say, " in relation to the question of the acceptance of a particular charter by an existing corporation, or by corporators already in the exercise of corporate functions, the acts of the corporate officers are admissible evidence from which the fact of acceptance may be inferred. It is not indispensable to show a written instrument or note of acceptance on the corporation books. It may be inferred from other facts which demonstrate that it must have been accepted." [See also the King v. Amory, 1 Term, 588.]

The case of Randolph v. Parish, [9 Porter, 76,] is conclusive to shew that an instrument circumstanced like the present, may be declared on as a bill of exchange, although after acceptance, it might have been treated as a promissory note. The short statement which in appeals from justices of the peace, is received in lieu of a declaration, alleges that the bill was presented for acceptance to the drawee, who refused to accept or pay the same. The bill was payable on demand, and there was therefore no necessity or propriety in a presentment for acceptance. But as technical accuracy has never been required in the pleadings in such cases as the present, the averment may be considered as a

refusal to pay the bill on presentment.    It was however necessary to prove the fact of presentment, and refusal to pay the bill, and notice to the drawer, or as an excuse for not doing so, that there were no funds in the hands of the drawee, which as we understand the bill of exceptions, the court ruled to be unnecessary.

The objection that the bill appears on its face, to have been drawn by Williams, individually, and that extrinsic proof was inadmissible to prove that it was drawn by him, as the agent of the company, and was so received by the holder, is untenable. There are clear indications on the bill itself that it was not drawn by Williams, in his private character, but as president of the company, and it was certainly competent for the plaintiff to prove that fact, and that he was authorised by the company thus to charge it.    Mechanics Bank of Alexandria v.  Bank of Washington, [5 Wheaton, 326;] and Lazarus v. Shearer, [2 Ala. 718,] where this precise point was thus ruled in a case where the indications that the bill was accepted for another, were not near so strong as is this case.

We can perceive no objection whatever to the consolidation of these suits, as it regards the sureties, the same being assented to by the parties in court.    It did not in the slightest degree affect their contract, the same persons being sureties in all the cases. The effect of the consolidation was, that if a judgment was obtained against their principal a judgment would be enterred against them for the entire amount for which they were responsible in one judgment, instead of several judgments for the several amounts, which added together, comprise the sum for which they were bound.    The whole effect is, without in the slightest degree varying or increasing their responsibility, to diminish the amount of cost, for which they would otherwise be liable.

Let the judgment be reversed, and the cause remanded.