# Louisville & Nashville Railroad Co. v. The State, ex rel. Gray.

## Quo Warranto.

(Decided Dec. 19, 1907.   45 South. 296.)

1. *Quo Warranto; Procedure; Form of Remedy.*—The common law in reference to procedure in the nature of quo warranto has been supplanted in Alabama by our statutory system which is the only system of law in the state touching this remedy, and proceedings in the nature of quo warranto not complying therewith cannot be sustained. Chapter 94, secs. 3417-3439, Code 1896.

[Louisville & Nashville Railroad Co. v. The State, ex rel. Gray.]

2. *Same; Information as Pleading.*—Under section 3428, the information in quo warranto is a pleading, and subject to demurrer for failure to comply with the requirements of the statute, whether it be to forfeit a charter, or to oust from usurpation of office or franchise.

3. *Same; Legislative Power.*—The enactment of sec. 3428, Code 1896, requiring the complaint in quo warranto proceeding to clearly and concisely set forth the act or omission complained of was within the legislative power.

4. *Same; Information; Alternative Allegation.*—While it is permissible to state different grounds in the same information, they should be stated in separate counts or paragraphs; and an information which charges alternatively in the same count for usurpation of a franchise, and is confused and obscure as to the grounds on which relator bases the cause of action, is demurrable for a failure to comply with the requirements of section 3428, Code 1896.

5. *Same.*—Whether a foreign corporation with charter power from a foreign state to operate a railroad may do so without charter power from this state should be raised by answer to the writ or information, and such information is not defective for a failure to allege that the corporation was without power under its charter to operate a road in this state, or that it had not complied with the domestic law authorizing foreign corporations to do business in this state.

6. *Pleading; Pleas; Duplicity.*—With the exceptions of pleas in abatement, pleas are not demurrable for duplicity.

7. *Railroads; Charters; Amendment.*—Though a corporate charter is a contract such as the Federal Constitution prohibits the impair ment of, it is subject to the ordinary rules governing subsequent modifications of contracts, and this inviolability from impairment by legislative action may be bargained away by the corporation, hence, although the charter under consideration was granted before the adoption of article 14, Constitution 1875, and is exempt from that article without the company's consent, the company may take the benefit of the provisions of §§ 1170, 1171, Code 1896, by accepting such provisions and bringing its charter powers within legislative control as is contemplated by sections 3 and 25 of article 14 of the Constitution of 1875.

8. *Same; Submission to Legislative Control; Constitutional Provision; Acceptance.*—No formal or express acceptance is necessary under section 25, article 14, Constitution 1875, to enable a railway company chartered before the adoption of the article to enjoy the benefits of future legislation, and when a railroad company chartered before such Constitution was enacted accepts the benefits of sections 1170 and 1171, Code 1896, it brings itself within the provisions of said section 25.

9. *Same; Statutory Provisions; Acceptance by Stockholders.*—Whether or not the stockholders of a corporation, chartered before the state had reserved the right to amend the charter, except by the consent of the stockholders, had consented to a change in corporate power does not depend alone upon some affirmative act showing an express intent, and where a railroad chartered before the adoption of article 14, Constitution 1875, has for more than thirty years

availed itself of the benefits of sections 1170 and 1171 by operating a railroad in this state and no stockholder has objected to the arrangement during such time although regular meetings of the stockholders had been held and the arrangement known of, a sufficient acceptance of the stockholders is shown.

10. *Same.*—The provision of section 1170, Code 1896, is for the benefit of the stockholders of the domestic corporation and who may waive compliance therewith and who alone may object to non-compliance therewith and, hence, the state may not in quo warranto proceedings, object that the stockholders of the domestic company which made a contract with the foreign company did not give assent as required by said section.

APPEAL from Montgomery City Court.

Heard before Hon. A. D. SAYRE.

Quo warranto by the state of Alabama, on the relation of Henry B. Gray against the Louisville & Nashville Railroad Company. From a judgment of ouster, defendant appeals. Reversed and rendered, and remanded.

Most of the facts as to the information and pleadings appear in the opinion of the court, but for the purposes of this report it is deemed advisable to set out pleas 16 and 17, which are as follows: 16. The defendant further answering the information or petition filed in said causes pleads and says: That it, the said defendant, is, and has been, for a long period of time, towit, forty years, a body corporate duly created by, and duly organized and existing under the laws of the state of Kentucky, with the power and authority, under its charter and the laws of the state of Kentucky, to construct, maintain and operate railroads, and that afterwards its charter was duly amended by an act of the General Assembly of the Commonwealth of Kentucky, entitled "An Act to amend the charter of the Louisville and Nashville Railroad Company," which was duly passed and adopted by the said General Assembly, and was duly approved by the Governor of said state on towit, the 6th day of March, 1878, and was thereby duly enacted as a law of said state, which act last aforesaid is in words and figures as follows, towit: "An Act to amend the charter of

the Louisville & Nashville Railroad Company. Whereas, in consequence of the lease of the Nashville & Decatur Railroad from Nashville to Decatur, and the completion of the South & North Alabama Railroad Company, from Decatur to Montgomery, by the Louisville & Nashville Railroad Company, and of its ownership of a majority of the capital stock of the North & South Alabama Railroad Company, (all requiring a large investment of money), the stockholders of the Louisville & Nashville Railroad Company have become largely interested in the commerce and railroad business between the states of Kentucky and Tennessee and the southeast, and the several railroad connections in that part of the country; and in order to protect and promote their interest and legitimate business, the president and directors believe it may become necessary for the company to operate, lease or purchase other railroads not lying within the state of Kentucky, and to that end, that the charter of the company should be amended; therefore, be it enacted by the General Assembly of the Commonwealth of Kentucky: Section 1. That the charter of the Louisville & Nashville Railroad Company be, and is hereby so amended as to authorize its president and directors with the assent or approval of a majority in interest of the stockholders of the company present or represented at any annual or called meeting thereof to operate, lease, or purchase, upon such terms or in such manner as they deem best, any railroad in any other state or states deemed necessary for the protection of the interests of the stockholders." And the said defendant further avers that the said defendant, by the action of its stockholders and directors thereafter duly had, accepted the said amendment to its said charter, and has ever since been acting thereunder, and exercising the authority and powers therein and thereby conferred upon it. That in and

by the said amendment the said defendant was vested with, and had the power and authority, by and with the assent or approval of a majority in interest of its stockholders, duly given, as required by law, to operate, lease or purchase, upon such terms, or in such manner as they deemed best any railroad in any other state or states deemed necessary for the protection of the interests of its stockholders, and, therefore the power and authority to so operate, lease or purchase any railroad in the state of Alabama, and especially the railroad mentioned in the said information or petition; and that, under and in conformity with the powers and authority so had and enjoyed by it under said amendment, and by and with the assent of all of its stockholders, duly expressed and given, the said defendant has ever since been operating the railroad of the South & North Alabama Railroad Company, extending from the city of Decatur, in the state of Alabama, to the city of Montgomery, in said state, in the manner and for the purposes and to the extent hereinafter stated.

And the said defendant further avers that its said charter was further amended by an act of the General Assembly of the Commonwealth of Kentucky, duly approved and enacted on, towit: the 27th day of January, 1880, and entitled "An Act amending the charter of the Louisville & Nashville Railroad Company," which act is in words and figures as follows, towit: "An act amending the charter of the Louisville & Nashville Railroad Company. Be it enacted by the General Assembly of the Commonwealth of Kentucky: Section 1. That in addition to the power and authority conferred upon the Louisville & Nashville Railroad Company by the act approved March 6, 1878, chapter 278 entitled 'An Act to amend the charter of the Louisville & Nashville Railroad Company,' 'to operate, lease or purchase upon such

terms or in such manner as the president and directors might deem best, any railroad in any other state or states, deemed necessary for the protection of the interest of the stockholders,' the said company shall also have the power and authority to purchase and hold a majority in amount of the capital stock of any railroad company or companies, chartered by any other state or states, in order to secure to the Louisville & Nashville Railroad Company, the control in the management and operation as aforesaid in such other state or states; *Provided,* That a majority in interest of the stockholders of the company present or represented by proxies, at any annual or called meeting thereof, shall accept this act as an amendment to this charter. Section 2. This act to take effect from and after its passage."

That the said amendment was duly accepted by a majority in interest of the stockholders of the said defendant present and lawfully represented by proxies in a meeting of the stockholders of the said defendant duly held for said purpose; and the said defendant has ever since exercised the said power by and with the assent of its stockholders. And that under its said charter as so amended, the said defendant had the power and authority to purchase and hold the majority in amount of the capital stock of any railroad company or companies chartered by any other state or states, in order to secure to the said defendant the control in the management and operation of the railroad or railroads of the company or companies chartered as aforesaid in such other state or states; and that in and by said amendment the said defendant had the power and authority to purchase and hold a majority in amount of the capital stock of the said South & North Alabama Railroad Company, for the purposes, expressed in said amendment, and also the power to hold, for said purposes, a majority of said cap-

11 R

ital stock which may have been previously acquired by the said defendant.

And the said defendant further avers that it had, at the time the petition or information was filed, and for a long time prior thereto, done all that foreign corporations were required by the laws of Alabama to do before doing business in the state of Alabama, and to that end, it had, from time to time, filed with the Secretary of State of the state of Alabama, instruments in writing designating a known place of business in the state of Alabama, and agents residing thereat as its authorized agents, in said state, copies of such instruments so filed are hereto attached, marked Exhibits "C," "D," and "E," and made parts hereof, and defendant did thereafter, on the 28th day of November, 1901, file with the Secretary of State of the state of Alabama, a certified copy of its Articles of Incorporation or Association. That the said South & North Alabama Railroad Company was duly organized under an act of the General Assembly of Alabama, entitled, "An Act to incorporate the South & North Alabama Railroad Company," duly passed and enacted, and duly approved by the Governor of said state, on towit, the 17th day of February, 1854, a copy of which act and of the sections of the charter of the Russell Railroad Company therein referred to is hereto attached, marked "Exhibit F-1," and made a part hereof. That afterwards, towit: on the 23rd day of February, 1860, the charter of the said South & North Alabama Railroad Company, was duly amended by an act of the General Assembly of Alabama, duly passed, approved and enacted, a copy of which act is hereto attached, marked "Exhibit F2," and made a part hereof. That afterwards, towit: on the 30th day of December, 1868, the charter of the said South & North Alabama Railroad Company was further

duly amended by an act of the General Assembly of Alabama, duly passed, approved and enacted, a copy of which is also hereto attached, marked "Exhibit F-3," and made a part hereof.

That afterwards, towit: on the 26th day of February, 1872, the charter of the said North & South Alabama Railroad Company was further duly amended by an act of the General Assembly of Alabama, duly passed, approved and enacted, a copy of which act is also hereto attached, "marked "Exhibit F-4," and made a part hereof. That all of the said amendments were duly accepted by the stockholders of the said South & North Alabama Railroad Company; Thereafter, the General Assembly of Alabama passed certain general laws applying to all railroad corporations incorporated under the general or special laws of the state of Alabama, and which are now sections 1170 and 1171 of the Code of Alabama of 1896, which sections of said Code read as follows: "1170. A corporation, chartered under the laws of this or any other state heretofore or hereafter created for the purpose of building, construction or operating a railroad may, at any time, by means of subscription to the capital of any other corporation or company, or otherwise, aid such corporation or company in the construction of its railroads, for the purpose of forming a connection with the road owned by such corporation or company furnishing aid; or any railroad corporation, organized in pursuance of the laws of this or any other state, may lease or purchase any part or all of any railroad constructed by any other corporation or company, if the lines of such road are continuous or connected, upon such terms and conditions as may be agreed on between the corporations or companies, whose lines are so connected, may enter into any arrangement for their common benefit, consistent with, and calculated to promote

the objects for which they were created; but no such aid shall be furnished, nor any purchase, lease or arrangement perfected, until a meeting of the stockholders of each of such corporations or companies has been called by the directors thereof, at such time and place, and in such manner as they shall designate; and the holders of a majority in value of the stock of such corporation or company, represented at such meeting, in person or by proxy and voting thereat, shall have assented thereto."

"1171. Any railroad company incorporated by the laws of any other state and now owning or operating, or which is or may be authorized to own or operate, by lease or otherwise, any railroad in this state, is authorized and empowered, upon the resolution of its board of directors, to aid any railroad company incorporated under any general or special law of this state, in the construction, renovation or operation of its railroad, by the endorsement or guaranty of its securities which have been or may be issued for such purpose, in such manner as may be agreed upon by the board of directors of the contracting companies, or by leasing, or by guaranteeing the rentals of any lease of any such railroad, on such terms as may be agreed upon by the respective boards of directors." The said South & North Alabama Railroad Company has for many years exercised the powers conferred upon it by said general laws, as hereinafter set out, and the stockholders of said company, with knowledge of said acts, have acquiesced therein in the manner hereinafter alleged, and by the exercise of said power and the acquiescence of its stockholders the South & North Alabama Railroad Company has accepted the benefits of said general laws in the manner and to the extent provided by the Constitution of the State of Alabama. Said railroad company was and still is vested with the powers and authority set forth and contained

in said original charter and in said several amendments thereto hereinabove mentioned and exhibited herewith, and under its said charter as amended, as aforesaid, and under said general laws, the said South & North Alabama Railroad Company had and has among other powers therein conferred the following powers, towit:

1. To make all such arrangements, contracts and connections as it may deem necessary with other railroad companies or corporations.

2. To lease its road to any railroad company incorporated by the laws of any other state and authorized to own and operate any other railroad in this state.

3.. To issue two million dollars of preferred stock.

And the said defendant further avers that prior to the year 1871, the South & North Alabama Railroad Company, commenced to construct its railroad under its charter between the city of Decatur and the city of Montgomery, in the state of Alabama, but by reason of the lack of means and credit necessary therefor, it failed to complete said road and was unable to do so. In its efforts to complete said road, or to cause the same to be completed it duly made and entered into a contract with one Sam Tate, a copy whereof is hereto attached, marked Exhibit "G," and made a part hereof, and thereafter modified said contract by a further contract or duly made arrangement, a copy whereof is hereto attached, marked exhibit "H," and made a part hereof.

That the said Louisville & Nashville Railroad Company at that time owned and, under its charter, operated railroad from the city of Louisville in the state of Kentucky, to the city of Nashville in the state of Tennessee, and operated and controlled a railroad extending from the city of Nashville to the city of Decatur, in the state of Alabama, under a lease dated on towit: May 4. 1871, and was desirous of forming a connection with

some railroad south.    Believing the completion of the railroad of the South & North Alabama Railroad Company would afford it this opportunity, if it could be assured the said railroad would be operated in harmony with its own railroad, it agreed to construct said railroad, provided it could obtain a majority of the capital stock of said company, and so provide that its control of a majority of the capital stock of said company.    With this understanding and agreement between it and the said South & North Alabama Railroad Company, it, the said defendant, took an assignment of the said contracts between the said South & North Alabama Railroad Company, and the said Samuel Tate, a copy of which assignment is hereto attached, marked "Exhibit I," and made a part hereof; and thereafter, towit: on the 19th day of May, 1871, the said defendant duly made and entered into a contract with the said South & North Alabama Railroad Company for the construction of said road, a copy of which is hereto attached, marked exhibit "J," and made a part hereof.    By said contract, it was provided, among other things, that the said South & North Alabama Railroad Company should issue to then said Louisville & Nashville Railroad Company, two million dollars of preferred stock, if legally entitled to do so, and further that it should issue no additional stock or bonds not provided for in said contract, unless upon the authority of the stockholders given at a meeting thereof after the completion of the railroad, and until after it has issued to the said Louisville & Nashville Railroad Company the said two million dollars of stock, and that the said Louisville & Nashville Railroad Company should have the right to vote two million dollars of stock at all meetings and upon all questions coming before the stockhoders of the said South & North Alabama Railroad Company, and further that the said South & North

Alabama Railroad Company, would use all lawful means to get legal authority to issue said preferred stock. Thereafter and pursuant to said agreement, the said South & North Alabama Railroad Company, procured the amendment to its charter by an act of the General Assembly of Alabama, approved Feb. 26, 1872, hereinabove mentioned, authorizing the issuance of said preferred stock, a copy of which is hereto attached, marked Exhibit "F-4," and made a part hereof.

That under and pursuant to said contract, the defendant, the said Louisville & Nashville Railroad Company, furnished the necessary means and completed the construction of the said railroad of the South & North Alabama Railroad Company between Montgomery and Decatur, Alabama. The construction of the said railroad was completed shortly before Oct. 1, 1872, and on said date said railroad was open for the transportation of passengers and freight. The said railroad of the South & North Alabama Railroad Company was built across drains, over one ridge after another, and across intervening valleys and streams through a wilderness. The territory through which it passed was sparsely settled, and there was not, at the time the construction of the road was entered upon by the defendant, on the line of said railroad a community of ten families at any one point between Montgomery and Decatur. The road was constructed with heavy grades uncompensated for curvature and excessive curvature which limited the train loads, making necessary the operation of large numbers of trains for the traffic moved, and largely increased the cost of maintenance and operation; all of which made it one of the most difficult and expensive railroads to operate in the Southern country. The character of the country over which the said railroad was constructed and the monetary conditions of the country at that period

made it an extremely expensive railroad to construct, and resulted in burdening it with a debt the interest on which had to be met. The said South & North Alabama Railroad Company had not the means with which to equip the said railroad, or with which to pay the defendant, the said Louisville & Nashville Railroad Company, for equipping it, and it was not for this reason equipped under the terms of the contract, a copy of which is marked Exhibit "J," and when it was completed, it was without the equipments necessary to operate the said railroad, or means, or credit with which to obtain the same, and was not in a financial condition that would enable it to accept the said railroad from the defendant, the said Louisville & Nashville Railroad Company, and operate it with its own resources. There was, at that time, no person or corporation other than the said Louisville & Nashville Railroad Company, from which the said South & North Alabama Railroad Company could obtain assistance in the operation of said railroad, and to induce the said Louisville & Nashville Railroad Company to aid the said South & North Alabama Railroad Company to operate said railroad in conjunction with its own railroad, the stockholders of the said South & North Alabama Railroad Company, elected as members of its Board of Directors, Albert Fink and Thomas J. Martin, who were then officers of the said Louisville & Nashville Railroad Company. The said Thomas J. Martin was elected president of the said South & North Alabama Railroad Company and Albert Fink was elected vice-president and general superintendent of the said company. These officers appointed several of the subordinate accounting officers of the said Louisville & Nashville Railroad Company to like offices of the said South & North Alabama Railroad Company, for the purpose of economy and convenience in handling the joint traf-

fic and other business of the two railroads and keeping
the accounts of the said South & North Alabama Rail-
road Company with the least expense, but employed as
operating, traffic and maintenance officers and agents,
persons who were not in any manner employed by, or
connected with the Louisville & Nashville Railroad Com-
pany; the operation of said railroad was then not only
for the South & North Alabama Railroad Company, but
all of its operations were in its name.  The earnings at
this time were not sufficient to pay this expense and in-
terest on its bonded indebtedness, and the funds neces-
sary to this .end were advanced by the said Louisville &
Nashville Railroad Company and repaid to the extent of
the earnings of the said South & North Alabama Rail-
road Company, and monthly and annual accounts of the
earnings and expenses of the operation of the said South
& North Alabama Railroad were made by its president
and its board of directors, and by its board of directors
to its stockholders and said railroad continued, for a
long time, to be so operated and to have, as some of its
officers, persons who held similar offices under the Louis-
ville & Nashville Railroad Company, or otherwise con-
nected with it.  And said railroad continued for a long
time, towit: for about fifteen years, to be so operated.
and to have as some of its officers, persons who held sim-
ilar offices in the Louisville & Nashville Railroad Com-
pany, or otherwise connected with it; that at no time
during such operation of the South & North Alabama
Railroad Company were its earnings sufficient to pay the
operating expenses, and the interest upon its indebted-
ness; the defendant always advanced the necessary mon-
ey for these purposes; and part re-payment of these
sums consumed the earnings of the said railroads as fast
as they accrued, and as the said South & North Alabama
Railroad Company, was without means, it could not en-

ter upon any special expenditure without the aid of the said Louisville & Nashville Railroad Company, from which it was obtaining the necessary means to make such expenditures.

That thereafter, towit, more than twenty years prior to the filing of the petition and information in this case, the defendant had become the owner and holder of a large majority of the common stock of the said South & North Alabama Railroad Company, in additional to the $2,000,000 of preferred stock, which the defendant had received, in part payment for the construction of said road, and had also become the owner of or endorser upon nearly all of the then outstanding bonded indebtedness of the said South & North Alabama Railroad Company, and being the majority stockholders, and the largest creditor of said company, and its consent and aid being necessary to the maintenance and operation of the railroad of the said South & North Alabama Railroad Company, it was advised and honestly, and in good faith believed that, with the consent of the directors of the said South & North Alabama Railroad Company, it had the right to operate said railroad for the said South & North Alabama Railroad Company subject to the approval of the Board of Directors of the said South & North Alabama Railroad Company as to the manner in which said road should be operated, and the directors of the said South & North Alabama Railroad Company, being likewise so advised, and honestly and in good faith so believing, the formality of appointing subordinate offices in the Louisville & Nashville Railroad Company to similar offices in said South & North Alabama Railroad Company, sometimes, and in some instances was discontinued, and the transpotation and bills of lading previously issued in the name of the said South & North Alabama Railroad Company was thereafter issued by and

in the name of this defendant. The board of directors of the said South & North Alabama Railroad Company, from time to time, elected as the principal operating officer of the said South & North Alabama Railroad Company, an officer of the said Louisville & Nashville Railroad Company, and through such officer, the said railroad was continued to be operated in the name of the said Louisville & Nashville Railroad Company, by agents and servants employed in its name, but in other respects, the operation of the said railroad continued the same as it had been, when the officers and employes who handled its business were employed and appointed in the name of the said South & North Alabama Railroad Company; the same character of expense which had been incurred in the operation of the said railroad when the business was carried on in the name of the said South & North Alabama Railroad Company, continued to be charged to the said South & North Alabama Railroad Company, and all of the earnings which had accrued to the said South & North Alabama Railroad Company when its railroad was operated in its own name continued to be credited to said company, and were applied and accounted for just as they had been applied and accounted for, when the said railroad was operated in the name of the said South & North Alabama Railroad Company; daily accounts of the operation of the said railroad were kept and monthly and annual accounts of the operation of the said railroad were made and submitted to the secretary of the said South & North Alabama Railroad Company from month to month and from year to year, and were furnished or delivered to the president of the said South & North Alabama Railroad Company, and by him rendered to its board of directors ,and by its board of directors submitted to its stockholders. From year to year, the board of directors

of the said South & North Alabama Railroad Company, with full knowledge of the manner in which said railroad was being operated, elected as its principal operating officer, an officer of the said Louisville & Nashville Railroad Company, for the express purpose of continuing the existing method of operating said railroad for said South & North Alabama Railroad Company, and to this extent, and in this manner the said Louisville & Nashville Railroad Company has been operating the said railroad of the said South && North Alabama Railroad Company continuously for more than twenty years, down to the filing of the petition in this cause, and up to the present time. Indebtedness were lawfully created from year to year in the operation and improvement of the said railroad and in paying interest upon its bonded indebtedness in sum exceeding its income, and these indebtednesses were, from time to time, duly passed upon by the directors and stockholders of the said South & North Alabama Railroad Company, and by them duly approved, and negotiable bonds were duly issued, duly secured by mortgage or deeds of trust upon said company's property for the payment of the same, until the amount of the bonded indebtedness of the said South & North Alabama Railroad Company is now nearly $12,-000,000. Of this amount of bonds, the Louisville & Nashville Railroad Company, in order to enable the said South & North Alabama Railroad Company to realize upon the same, duly endorsed about $8,000,000, and of these now owns about $4,753,000, and there is due to the said Louisville & Nashville Railroad Company upon guaranteed cumulative dividends or interest upon its two million dollars of preferred stock, a large sum, to-wit, about $4,000,000.

That the said operation by the said defendant of the said railroad of the said South & North Alabama Rail-

road Company during said entire time was open and notorious and well known to the citizens of Alabama, and to the officers and other duly constituted authorities of the state of Alabama, and the said state never, directly or indirectly, objected or attempted to object, to the operation of said railroad by the defendant, and by such acquiescence therein encouraged the defendant to incur the expense made by it from year to year and to incur large obligations which it would not have done, had the said state attempted to prevent said operation or made known any objection thereto that it might have had.

That owing to the character of the country through which the said railroad of the said South & North Alabama Railroad Company could have operated said railroad without the aid of the defendant, and had the defendant, at any time during said period, declined to continue to so operate the said railroad, or in some manner furnish the means with which to operate it, said railroad would necessarily have become a bankrupt, and would have been sold for the payment of its debts; during all of said time the directors of said railroad company were men of high character and great business experience and ability, and knew said facts.

The defendant during said time was advised and honestly and in good faith believed, and, upon advice of counsel and belief ,the defendant avers that it had the right to so operate said road in the manner aforesaid; it knew that the directors of the South & North Alabama Railroad Company could not change said manner of operation without great loss and damages to said railroad, and it did not believe that they would do so to the injury of their said company. The defendant during the whole of said time lawfully controlled and operated a railroad connecting with the said railroad of the said South & North Alabama Railroad Company at Decatur

and also lawfully operated a railroad that connected with it at Montgomery, and the existence of some properly managed road that would co-operate with defendant in the harmonious operation of a continuous line of railroad between Decatur and Montgomery was of great importance to the defendant, and it believed that by the expenditure of large sums in the development of the country over which the said South & North Alabama Railroad Company passed and its proper management, it could be saved from bankruptcy, made a paying railroad and eventually pay off and discharge the indebtedness created in its construction and operation, and relying in good faith upon the continuance of the existing method of operating said railroad, this defendant expended in the construction of other railroads ,which would serve as feeders to the said railroad of the said South & North Alabama Railroad Company, nearly $9,-500,000 and invested in enterprises, which would contribute to the earnings of the said South & North Alabama Railroad Company, and for the purpose of building up traffic along the line of said railroad, an additional sum of $500,000. In the operation of the said railroad as aforesaid, the physical conditions of the said railroad has been kept up to the highest standard, and the said railroad operated in an efficient manner as a first class railroad, and such operation of the said railroad, together with the construction by the defendant of other railroads, to develop the business of the territory through which the railroad of the South & North Alabama Railroad Company ran, and the investments by the defendant in enterprises for the purpose of creating business upon said railroad, has been largely instrumental in developing the territory through which the said South & North Alabama Railroad extends, and making it one of the most prosperous portions of the state of Ala-

bama, and the continued prosperity of the territory through which said railroad runs is largely dependent upon the continued operation of said railroad as it is being operated, as a first class railroad and as a part of a continuous through line of railroad between New Orleans, Louisville, Cincinnati and St. Louis.

The said South & North Alabama Railroad Company, although its property has been greatly developed and improved, and the business along the line of its said railroad greatly increased, has not now sufficient equipment or the equipment necessary to operate its said railroad without the aid and co-operation of the said Louisville & Nashville Railroad Company, and the business of the equipment shops from which additional equipment would have been obtained, is such that a sufficient equipment for the proper operation of the said railroad could not be obtained within one year, even if the said South & North Alabama Railroad Company had the means with which to pay for the same. An equipment sufficient for the proper independent operation of the said railroad would cost in excess of four million, and the said South & North Alabama Railroad Company could not without the aid of the said Louisville & Nashville Railroad Company, obtain such an equipment for many years to come, and the discontinuance of the operation of said railroad in the manner in which the same has been and is now being operated, would disarrange and inconvenience a large portion of the business of the state of Alabama, and result in inconvenience and hardship to the public generally.

And the defendant further avers that during all the time during which the said defendant has been operating the said railroad of the said South & North Alabama Railroad Company, as aforesaid, the said last named company has continuously kept up and maintained its

corporate organization, having at all times, its board of directors and other officers, and necessary agents; and during all of said times its stockholders held annually its regular meetings, and at such meetings gave the necessary attention to the business of said company, and regularly, from year to year, electing a full and competent board of directors; and that the said board of directors regularly, and from time to time as the exigency and necessity of said company required, duly convened in meetings and transacted such business, and performed such acts as were required of them by the interests of the said company; and, at all times during the said operation of said railroad ,the said board had charge and control of the business of said railroad company, and fully performed the functions of their office; and that at no time did the said board abandon the said railroad to the said Louisville & Nashville Railroad Company, or to anyone else.

And the said defendant further avers that the relator, Henry B. Gray, claims to be the holder of one hundred and seventy shares of the stock of the South & North Alabama Railroad Company,—forty-four shares of which said stock he purchased on or about the 2nd day of November, 1901, four shares thereof he purchased on or about the 19th day of January, 1905, and the remainder of said stock, on or about the 31st day of December, 1901.

That at the time the said Louisville & Nashville Railroad Company entered upon the operation of the said railroad of the said South & North Alabama Railroad Company, as heretofore alleged, and for many years thereafter, and while the said Louisville & Nashville Railroad Company was expending large sums, as aforesaid, in the operation of said railroad and the payment of interest upon its bonded indebtedness for the said

South & North Alabama Railroad Company, with the consent and approval of the board of directors of the said South & North Alabama Railroad Company, all of the stock now held by the said Henry B. Gray, was owned and possessed by members of one or another of said board of directors who consented to and approved of the operation of said railroad by the defendant, the said Louisville & Nashville Railroad Company, as aforesaid, and with knowledge of the expenditures it was thereby incurring and would have to incur, participated in inducing the said Louisville & Nashville Railroad Company to continue the operation of said railroad as aforesaid, and the relator purchased said stock with knowledge that the defendant was and had for a long time been operating said railroad as aforesaid, and of the other facts hereinabove stated.

That on or about the 10th day of March, 1905, the said Henry B. Gray filed in the said city court of Montgomery, on behalf of himself, and such other stockholders in the South & North Alabama Railroad Company as might make themselves parties complainant to said cause, a bill in equity seeking an accounting from the Louisville & Nashville Railroad Company of its management and operation of said railroad, and to have it dispossessed from the further operation of the South & North Alabama Railroad Company, and praying an appointment of a receiver of the said South & North Alabama Railroad pending the litigation, a copy of which bill of complaint is attached to the 15th plea heretofore filed and is here referred to and made a part of this plea and answer.

Thereafter, on towit, the 25th day of May, 1905, the said Henry B. Gray, through his solicitor, made a motion in said court for the appointment of such receiver, *pendente lite,* as prayed in said bill, and said motion was

12 R

heard in said court upon the bill, and affidavits offered by the parties, and the court, upon full consideration of the matter, declined to appoint a receiver for said property as prayed, and thereupon the said Henry B. Gray appealed from the decree of the said court declining to appoint such receiver, *pendente lite*, to the Supreme Court of Alabama, where said cause is now pending and undetermined.

And the said defendant further avers that upon the filing of said bill of complaint by the said Henry B. Gray, and upon his motion, an *ex parte order* was made in said cause by the said city court of Montgomery, a copy of which is hereto attached, marked Exhibit "K," and made a part hereof. That thereupon, the said Henry B. Gray having given bond as required by said order, a writ of injunction was duly issued out of the said city court in said cause, and duly served upon the defendant and upon the said South & North Alabama Railroad Company, and upon the directors thereof, who were made parties to said bill; and that the said injunction has never been dissolved, but is still in full force and effect. A copy of said writ is hereto attached, marked Exhibit "K-2," and made a part hereof. That afterwards, to wit, on the 20th day of March, 1905, the said Henry B. Gray amended his said bill of complaint, and a copy of said amendment is hereto attached, marked Exhibit "L," and made a part hereof. That thereafter, to wit: on the 21st day of March, 1905, upon motion of the said Henry B. Gray, a further order was made and entered in said cause by the said city court, a copy of which is also hereto attached, and marked Exhibit "M," and made a part hereof; and thereupon, a further writ of injunction was issued out of said court in pursuance of the said order last aforesaid, and duly served upon the defendant and the said South & North Alabama

Railroad Company, and the said directors thereof made parties to said bill of complaint, a copy of which is hereto attached, marked Exhibit "N," and made a part hereof. That said injunction last aforesaid has never been dissolved, but is still of full force and effect. That, in and by the said writs of injunction, the said defendant and the said South & North Alabama Railroad Company, and said board of directors and the other defendants to said bill of complaint are restrained as shown by the said writs; and that if a judgment of ouster is rendered in this cause, as prayed in and by the said information or petition, the defendant, as it is advised by counsel, and believes and therefore states, will be unable to make any further lawful contract with the said South & North Alabama Railroad Company, pending said injunctions, in respect to the management, control or operation of the said South & North Alabama Railroad Company; and that, as a result thereof, the railroad of the said South & North Alabama Railroad Company will have to be operated by the said South & North Alabama Railroad Company independently of defendant and its lines of railroad; and that the said South & North Alabama Railroad Company has neither the equipment, money or credit to enable it to operate its said railroad; and that, therefore, at least for a long time, the railroad of the said South & North Alabama Railroad Company, will be compelled to remain idle, or if operated at all, it will have to be operated in such manner as will give wholly inadequate facilities for the transportation of passengers and freight, thereby causing great loss and inconvenience to the people of Alabama, who depend upon said railroad for transportation; and such operation cannot and will not afford sufficient revenue to pay the operating expenses of said railroad, much less the interest on its indebtedness, as aforesaid; and that then

the effect of a judgment of ouster in this cause aided by the said injunction, will prove disastrous and ruinous to all interested in the said railroad and properties of the said South & North Alabama Railroad Company, including especially its stockholders; and that this defendant, who is the holder and owner of over ninety per cent of the capital stock of the said South & North Alabama Railroad Company, and more interested in the said last named company and its welfare than anyone else is or can be, will suffer great and irreparable injury, and this, without accomplishing any good whatever to the relator, or to the state of Alabama, or to the citizens of said state.

And, as defendant is informed and believes and therefore states, all of this is well known to the relator, and was so known when he commenced this suit; and yet, he commenced the same and perseveres in the prosecution thereof, not for the purpose of doing any good to the state of Alabama, or to the citizens thereof, but for his own selfish purposes; one of which is to aid him in embarrassing the defendant in the management and operation of its lines of railroad, and, as defendant is informed and believes, and therefore, states, to thereby coerce the defendant to make an adjustment or compromise of the litigation between them to his advantage, and to the disadvantage of defendant.

And the said defendant, therefore, avers that this suit is not prosecuted for the purpose of remedying a public wrong, or of enforcing a public right, or in the interest of the state of Alabama or of its citizens, but for the sordid and selfish purposes of the relator as aforesaid.

And the said defendant further avers that it entered into the said arrangements with the said South & North Alabama Railroad Company in good faith, and has continued them in good faith; and that relying upon said

arrangements, and upon the acquiescence of the state of Alabama therein, and in the operation of the said railroad of the said South & North Alabama Railroad Company, as aforesaid, and that it would not be interfered with by the state of Alabama, it not only made the expenditures and incurred the liabilities aforesaid in the construction, maintenance, improvement and operation of said railroad, but it has made its arrangements for the operation of its line of railroad from the city of New Orleans in the state of Louisiana, to the cities of Nashville, in the state of Tennessee, and Louisville in the state of Kentucky, and Cincinanti in the state of Ohio, and St. Louis in the state of Missouri (to all of which said points the defendant lawfully controls and operates lines of railroad, under its charter), which are continuous, and some of long duration, in their character, and would not and could not have been profitably made temporarily or for a short time; and also, relying upon said acquiescence as aforesaid, the defendant has spent large sums of money in constructing feeders to the said railroad of the said South & North Alabama Railroad Company, as hereinabove set forth, and has now long time contracts with many industries along the lines of said feeders and of said South & Noth Alabama Railroad Company, for the transportation of raw materials to be used in and by the said industries, which cannot be carried out, and performed by defendant, if it is ousted of the right to operate the said railroad of the said South & North Alabama Railroad Company, thereby causing great and almost ruinous loss and damage to defendant; and that, further, relying upon said acquiescence as aforesaid, the said defendant has made and entered into long time contracts with the government of the United States for the transportation of the mail from many different points upon the lines of railroad aforesaid, in

the performance of which it is now engaged; and that, to the performance of many of said contracts by defendant the use and operation of the said railroad of the said South & North Alabama Railroad Company by defendant is necessary, and without which it cannot continue to perform the same.

And the said defendant further avers that the operation of the said South & North Alabama Railroad Company, by defendant as aforesaid does not in any way, injuriously affect the state of Alabama, or the interests of its citizens, but, on the contrary, the road bed of said railroad is in first class condition, and one of the best in the south, and the equipment used thereon is also first class and will compare favorably with the equipment of any other railroad in the south; and the trains thereon are operated in such a manner as to give to the citizens of Alabama, and to the public, the best available service; and, in the meantime, the defendant is constantly improving said roadbed and equipment, being more interested therein than anyone else.

And the said defendant further avers that it does not, in any manner whatever, compete with the said South & North Alabama Railroad Company, and does not own or operate any line of railroad that competes therewith; but, on the contrary, the railroad of the said South & North Alabama Railroad Company as the same is now operated, forms an essential link in the line of defendant's railroad from the city of Cincinnati, Ohio, to the city of New Orleans, Louisiana; and that all its through freight and passengers to and from said cities, and intermediate points, as well as from St. Louis, Missouri, and other cities to New Orleans, Louisiana, and other intermediate points, are carried over the said railroad of the said South & North Alabama Railroad Company, thereby greatly enhancing the traffic over said road; and

the earnings from such traffic are justly and equitably apportioned between defendant and the said South & North Alabama Railroad Company; and thereby the defendant has greatly benefitted in the past, and still continues greatly to benefit, by the operation of said railroad, as aforesaid, the last named company.

And the said defendant further avers that the line of its said railroad from the said city of Cincinnati, to the said city of New Orleans and the said railroad of the said South & North Alabama Railroad Company are connected and continuous, and admit the passage of burden or freight and passenger cars over them continuously without break or interruption; and that the purpose, both of defendant and of the said South & North Alabama Railroad Company in the arrangement for the operation of the railroad of the latter company by defendant, as aforesaid, was, has been, and still is, to form a connection between and with the aforesaid railroad of defendant, and that of the said South & North Alabama Railroad Company.

And the said defendant further avers that all the averments, contained in the said bill of complaint so filed by the said Henry B. Gray against the defendant and others in the said city court of Montgomery charging fraud, collusion and oppressive acts by defendant against the said South & North Alabama Railroad Company; or charging that the directors of said last named company have been or were acting, at the dictation of defendant, in the interests of defendant, or against the interests of the said South & North Alabama Railroad Company; or charging defendant with the conversion of any of the properties of said company, or with a misappropriation of any of its funds, securities or property; or otherwise charging defendant with wrongful conduct towards the said company, its interests or property, are wholly un-

true. And defendant avers that, in the management and operation of the railroad and properties of the said South & North Alabama Railroad Company, it has done no wrong or injury thereto, but has always operated the same for the joint benefit of both companies, and has justly accounted to the said South & North Alabama Railroad Company for all that it was entitled to, and to the satisfaction of its directors and stockholders.

And that the stockholders and board of directors of the said South & North Alabama Railroad Company, and the stockholders and board of directors of this defendant company, with full knowledge of all of the facts aforesaid as to the operation of the railroad of the said South & North Alabama Railroad Company, and the manner thereof, annually, from time to time for many years, and down to the filing of the information in this cause approved, confirmed and ratified the same at duly convened meetings of the said stockholders and directors respectively.

Wherefore, the said defendant says that it has not, at the time of the filing of the petition or information in this cause, unlawfully, and without authority of law, used and enjoyed and usurped the rights, privileges and franchises granted by the state of Alabama to the said South & North Alabama Railroad Company; nor has it been using, enjoying and usurping a franchise which had not been granted to any person or persons by the state of Alabama and, therefore, a judgment of ouster should not be rendered against it, as prayed in and by the said petition.

But defendant further says that if mistaken in the effect of the matters aforesaid, and in its right thereunder, then, upon the matters and things hereinabove alleged and set forth, and by reason thereof, all of which it is ready to verify, the said defendant says that this

court, in the exercise of a sound discretion, should not render judgment against it as prayed in and by the said petition.

And now comes the said defendant and by leave of the court first had and obtained, amends its further plea or answer filed in said cause on the 27th day of March, 1906, and numbered 16, as follows:

1st. By inserting between the words, "that all of the said amendments were duly accepted by," and the words "the stockholders of the said South & North Alabama Railroad Company," as they occur on the fourth page thereof, in reference to the amendments alleged therein of the charter of the said South & North Alabama Railroad Company, the words, "all of" so as to make the sentence as amended, read as follows: "That all of the said amendments were duly accepted by all of the stockholders of the said South & North Alabama Railroad Company."

2nd. By striking from the said plea or answer the following words, as they immediately follow the averment of the contents of section 1171, of the Code of Alabama, ending with the words "on such terms as may be agreed upon by the respective boards of directors," as they occur on page numbered 5 of said plea or answer, towit: "The said South & North Alabama Railroad Company, has for many years exercised the powers conferred upon it by said general laws, as hereinafter set forth, and the stockholders of said company, with full knowledge of said Acts, have acquiesced therein, in the manner hereinafter alleged, and by the exercise of said power and the acquiescence of its stockholdrs, the South & North Alabama Railroad Company has accepted the benefits of said general laws in the manner and to the extent provided by the Constitution of the state of Alabama," and by inserting in lieu thereof, the following:

"And the said defendant further avers that prior to the time of the enactment of the general laws hereinabove set forth, the said defendant had made an arrangement with the said South & North Alabama Railroad Company, acting under and in pursuance of authority granted by its board of directors in meeting duly called and convened, wherein and whereby the said defendant was authorized to operate the railroad of the said South & North Alabama Railroad Company, as hereinafter fully stated and set forth, and under and in pursuance of said arrangement, the railroad of the said South & North Alabama Railroad Company was operated, as hereinafter also stated and set forth; and during all said time said railroad was so operated, and the authority under which said railroad was so operated, as aforesaid; and that all of the said stockholders, with knowledge as aforesaid, acquiesced in, and assented to the operation of said railroad as aforesaid during all the time, prior to the enactment of said general laws, during which said railroad was operated as aforesaid. That, after the enactment of the said general laws, the said arrangement between the said defendant and the said South & North Alabama Railroad Company, under which the said railroad was then being operated, as hereinafter set out, was renewed and has, since that time, been continued, by and under the authority of the board of directors of the said South & North Alabama Railroad Company, duly and regularly convened and by and with the knowledge of all the stockholders of the said South & North Alabama Railroad Company of the said arrangement and of the manner in which the said railroad was so continued to be operated after the enactment of the said general laws, as aforesaid.

And the said defendant further avers that the renewal of the said arrangement after the enactment of said gen-

eral laws ,was fully acquiesced in and assented to by all
the stockholders of the said South & North Alabama
Railroad Company, with the knowledge aforesaid, and
all of the said stockholders with the knowledge afore-
said, also fully acquiesced in, and assented to the con-
tinuance of the operation of the said railroad under this
said arrangement, as aforesaid, for many years; during
all of which time the said South & North Alabama Rail-
road Company fully enjoyed all the benefits derived
therefrom, all of which was also well known to all of
said stockholders. And the said defendant further avers
that the provisions of the said general laws were accep-
ted by the said South & North Alabama Railroad Com-
pany by and with the consent of all of its stockholders.

17. The defendant here reiterates all of the allega-
tions contained in the 16th plea as heretofore filed and
amended down to and including and ending with this
language: "Of this amount of bonds the Louisville &
Nashville Railroad Company, in order to enable the
South & North Alabama Railroad Company to realize
upon the same, duly endorsed about $8,000,000.00, and
of these now owns about $4,753,000.00, and there is due
to said Louisville & Nashville Railroad Company, upon
the guaranted cumulative dividends or interest upon its
two million dollars, of preferred stock a large sum, to-
wit, about $4,000,000.00," except that the several exhib-
its in such portion of said plea mentioned are attached
to said 16th plea and are here referred to and made a
part of this plea. The defendant further avers that dur-
ing the whole of said time it lawfully controlled and op-
erated a railroad connecting with the said railroad of
the South & North Alabama Railroad Company at De-
catur, and also lawfully operated a railroad that con-
nected with it at Montgomery, and the existence of some
properly managed road that would co-operate with de-

fendant in the harmonious operation of a continuous line of railroad between Decatur and Montgomery was of great importance to the defendant, and the defendant's railroad does not, in any manner whatever, compete with the said South & North Alabama Railroad Company, and defendant does not own or operate any line of railroad that competes therewith, but on the contrary, the railroad of the said South & North Alabama Railroad Company as the same is now operated forms an essential link in the line of the defendant's railroad from the city of Cincinnati, Ohio, to the city of New Orleans, Louisiana, and that all of its through freights and passengers to and from said cities and intermediate points, as well as from St. Louis, Mo., and other cities, to New Orleans, Louisiana, and other intermediate points are carried over said railroad of the said South & North Alabama Railroad Company, thereby greatly enhancing the traffic over said railroad, and that the line of the defendant's said railroad from the city of Cincinnati to the city of New Orleans, and the said railroad of the said South & North Alabama Railroad Company, are connected and continuous and admit the passage of burden or freight or passenger cars over them continuously without break or interruption, and that the purpose both of the defendant and of the said South & North Alabama Railroad Company, in the arrangement for the operation of the railroad of the latter company by defendant as aforesaid was, has been and still is to form connection between and with the aforesaid railroad of defendant and that of the said South & North Alabama Railroad Company, and the said defendant further avers that the aforesaid arrangement by and between the said defendant and the said South & North Alabama Railroad Company, was for their common benefit and was consistent with and calculated to promote the objects for which they were created.

[Louisville & Nashville Railroad Co. v. The State, ex rel. Gray.]

The defendant further avers that during all of the time during which the said defendant has been operating the said railroad of the said South & North Alabama Railroad Company, as aforesaid, the said last named company has continuously kept up and maintained its corporate officers, and during all of said time its stockholders held annually their regular meetings, and at such meetings gave the necessary attention to the business of said company, and regularly, from year to year, elected a full and competent board of directors, and that the said board of directors regularly from time to time, as the exigencies and necessity of said company required, duly convened in meeting and transacted such business and performed such acts as were required of them by the interests of the said company, and at all times during the said operation of the said railroad the said board had charge and control of the business of the said railroad company, and fully performed the functions of their office, and that at no time did the said board abandon the said railroad to the Louisville & Nashville Railroad Company or to anyone else.

Defendant further avers that the stockholders and board of directors of the South & North Alabama Railroad Company and the stockholders and board of directors of the defendant company with a full knowledge of all of the facts aforesaid as to the operation of the railroad of the said South & North Alabama Railroad Company, and the manner thereof, annually from time to time for many years and down to the filing of the information in this cause, approved, confirmed and ratified the same at duly convened meetings of said stockholders and directors respectively.

Wherefore, the said defendant says that it had not, at the time of the filing of the petition or information in this cause, unlawfully and without authority of law,

used and enjoyed and usurped the rights, privileges and franchises granted by the state of Alabama to the said South & North Alabama Railroad Company, nor has it been using, enjoying and usurping a franchise which had not been granted to any person or persons by the state of Alabama, and, therefore, a judgment of ouster should not be rendered against it as prayed in and by the said petition.

GREGORY L. SMITH, TILLMAN, GRUBB, BRADLEY & MORROW, and GEORGE W. JONES, for appellant. The running of a raliroad and the collecting of tolls for the same does not constitute the exercise of a franchise under the laws of the state of Alabama, hence ,the information does not allege that appellant is exercising any franchise, the right to exercise which can be tested by quo warranto. The definition of franchise, 33 N. E. 1053, 84 N. W. 808; 65 S. W. 829; 61 Pac. 499; 59 Atl. 649; 57 S. E. 873. What the public policy of the state is cannot be determined by the opinion of individual judges, but must be ascertained from the constitution and statutes of the state.—*Atwood v. Beck*, 21 Ala. 615. The legislation of Alabama shows that under the public policy of the state, every citizen has a right to operate a railroad as a matter of common right.—Constitution 1875, sec. 13, art. 14; sec. 21, art. 14; Const. 1901, sec. 242; Acts of 1872-3, 59; Acts 1880, p. 85 and 96; Acts 1882-3, pp. 154-152-177-190; Acts 1892-3, p. 559; Acts 1896-7, p. 956. Under this legislation, the running of a railroad is held to be a common right.—*Woodruff v. Erie R. R.*, 93 N. Y. App. 617. The allegations of the informations as to the alleged charge are too uncertain. —Sec. 3428, Code 1896; *State v. S. B. & L. Asso.*, 132 Ala. 50. The information is in the alternative and too uncertain to support a judgment.—*L. & N. R. R. Co. v.*

*Duncan,* 137 Ala. 454; *Southern Ry. Co. v. Blount,* 131 Ala. 591. A foreign railway company having charter powers to operate a railroad in Alabama, and complying with the requirements of the Alabama law, is authorized to operate a railroad in this state under the general law of comity.—*Black v. Sullivan Timber Co.,* 40 South. 667; *Fall v. U. S. S. & L. Co.,* 97 Ala. 427; 13 Peters 589; 35 N. E. 967; 100 U. S. 59; 101 U. S. 356; 96 U. S. 13; 109 U. S. 537; 104 U. S. 5; 25 Mich. 214; 153 Ill. 25. The L. & N. is authorized to operate the S. & N. under sections 1170 and 1171, Code 1896 without any authorization thereof by the stockholders. The requirement that such lease should be authorized by the stockholders is for their benefit and the failure to have such meeting can be objected to by them only.—*Nelson v. Hubbard,* 96 Ala. 251; *Barrett v. Pollack & Co.,* 108 Ala. 396; *Ala. & S. Co. v. McIver,* 112 Ala. 145; 96 Mich. 65; 145 U. S. 403. The intent of the lawmakers and not the letter of the statute constitute the law.—*Cocciola v. Wood-Dickerson Sup. Co.,* 136 Ala. 536. The failure to object to the arrangement between the two roads for a number of years operates as a ratification by the stockholders.—*State v. Montgomery L. Co.,* 102 Ala. 594. If sections 1170 and 1171 of the Code are unconstitutional in so far as they affect the charter of the S. & N., such unconstitutionality could only be set up by the company or its stockholders.—*State v. Montgomery L. Co., supra; Shehane v. Bailey,* 110 Ala. 308; *Jones v. Black,* 48 Ala. 540. The doctrine that the writ of quo warranto is discretionary, is settled in Alabama.—*State v. U. S. Endowment Co.,* 37 South. 442; *Capital City W. W. Co. v. Weatherly,* 105 Ala. 432; *State v. Southern B. & L. Asso.,* 132 Ala. 50. The courts are reluctant to grant a writ where the purpose is to protect private rights, especially where there are other remedies.—*State v.*

*Southern B. & L. Asso., supra*; 172 Ill. 129. That the writ is generally discretionary, see: *State v. Lewis,* 70 Ill. 25; *Commonwealth v. McCarter,* 98 Pa. St. 614; *Gilroy v. Commonwealth,* 105 Pa. St. 486; *State v. Dowland,* 33 Minn. 536; *Commonwealth v. B. & B. etc., Turnpike Co.,* 153 Pa. St. 47; *People v. Schnepps,* 179 Ill. 305 (53 N. E. 632); *Tillyer v. Mindermum,* 57 Atl., 329; *Spencer v. Clark,* 55 Atl. 331; *Ohio v. Waltcher,* 25 Ohio Circuit Court 605; *Commonwealth v. Cluly,* 56 Pa. St. (6 P. F. St.), 270; 94 Am. Dec. 275; *People v. Wildcat Special Drainage District,* 31 Ill. App. 219. Laches is such neglect or omission to assert a right as taken in conjunction with lapse of time and other circumstances causing prejudice to an adversary, operates as a bar in a court of equity.—12 Am. & Eng. Ency. of Law, 553; *Montgomery Light & Power Co. v. Leahy,* 121 Ala. 136; *Pressly v. Weekly,* 135 Ala. 520; *Harrison v. Heflin,* 54 Ala. 559. Twenty years is a period of time beyond which the courts are indisposed to permit past human transactions to be disturbed by judicial investigation.—*Matthews v. McDade,* 72 Ala. 382; *Bozeman v. Bozeman,* 82 Ala. 390; *Marksley v. Carey,* 74 Ala. 280. These doctrines are applicable to a proceeding under a writ of quo warranto as well as to other proceedings.—*People v. Schnepp,* 179 Ill. 305; *Commonwealth v. Philadelphia B. & B. M. Turnpike Co.,* 153 Pa. St. 47 (25 Atl. 1105); *People v. Boyd,* 132 Ills. 60 (23 N. E. 342); *Soule v. People,* 69 N. E. 24 (205 Ills. 618); *Jampson v. People,* 16 Ills. 256; *Chicago & N. W. R. R. v. West Chicago Park Commissioners,* 151 Ill. 205 (N. E. 1079); *State v. Town of West Port,* 116 Mo. 582 (22 S. W. 888); *State v. Jonesville Water Co.* 66 N. W. 512; *Attorney General v. Sheffield Gas Co.,* 3 DeJex M. & G., 304; *Attorney General v. Joy,* 16 Amer. & Eng. R. A. Cases, 643. The case of *Jackson v. Derrick,* 117 Ala. 366, is based on

the case of *State v. Lott & Brewer*, 64 Ala. 287, which in turn rests upon the case of *U. S. v. Kirkpatrick*, 9 Wheaton 720, and the reason for the doctrine in the case of *U. S. v. Kirkpatrick* has ceased.

PHARES COLEMAN, and S. H. DENT, JR., for appellee. The operation of a railroad and the collection of tolls thereon is a franchise and cannot be exercised and enjoyed except by express legislative grant. It is not a common right.—14 Am. & Eng. Ency. of Law, pp. 7, 8, 9 notes; 23 Id. 674; *State v. Centreville Bridge Co.*, 18 Ala. 678; *Blake v. Winona, etc. R. R. Co.*, 19 Minn. 419; *Memphis, etc. R. R. Co. v. Railroad Comm'rs*, 112 U. S. 619; *Morgan v. Louisiana*, 93 U. S. 17; *State v. Maine Central Ry. Co.*, 63 Me. 512; *E. T. etc. v. Hamblen Co.*, 112 U. S. 277; *Lawrence v. Morgan Louisiana, etc. R. R. Co.*, 39 La. An. 427; *Ex parte Henshaw*, 73 Cal. 493; *People ex rel etc. v. Kingston & Middleton Turnpike Co.*, 23 Wend. 193; 35 Am. Dec. 551; *Pierce v. Emery*, 32 N. H. 507; *Oregon R. R. Co. v. Oregonian Co.*, 130 U. S. 1; 32 L. R. A. 851; *Central Transportation Co. v. Pullman Co.*, 139 U. S. 240; *California v. Pacific R. R. Co.*, 127 U. S. 40; *Lake Superior etc. R. R. Co. v. U. S.*, 93 U. S. 442; *Thomas v. R. R. Co.*, 101 U. S. 71; *Branch v. Jessup*, 106 U. S. 467; *Pennsylvania R. R. v. St. Louis, etc., R. R.*, 118 U. S. 290; *Union Pacific Co. v. Chicago etc. Ry. Co.*, 163 U. S. 564. A railroad corporation cannot by lease or other contract turn over its railroad, or its franchise of operating a railroad and collecting tolls thereon to another railroad company, without express authority being given therefor by special grant of the Legislature.—*Penn. R. R. Co. v. St. Louis etc. R. R.*, 118 U. S. 309; 30 L. Ed. 83; *Oregon Ry. Co. v. R. R. Co.*, 130 U. S. 23 (32 L. Ed. 83); *Pittsburg R. R. Co. v. Bridge Co.*, 131 U. S. 385; *Central R. R. Co. v. Pull-*

13 R

*man Co.*, 139 U. S. 1; *St. L. R. R. v. Terre Haute R. R. Co.*, 145 U. S. 402; *U. S. v. Union Pacific R. R. Co.*, 160 U. S. 45; *Union Pacific R. R. Co. v. Chicago etc. Ry. Co.*, 163 U. S. 564; *Thomas v. West Jersey R. R. Co.*, 101 U. S. 71 (25 L. Ed. 950) ; *Branch v. Jessup*, 106 U. S. 468; *R. R. Co. v. Winans*, 17 How. 30, 15 L. Ed. 27; *Davis v. Old Colony R. R. Co.*, 131 Mass. 258; *George v. Central of Ga.*, 101 Ala. 607, 619; High on extraordinary Legal Remedies, § 667c. The surrender of the property or the functions of a corporation in order that while it is still to continue in existence, its business is to be carried on by another corporation to which such transfer is made, violates the rights of non-assenting stockholders arising from the contract created by the granting of the charter, and such surrender, unless the right is expressly reserved or expressly granted upon constitutional authority, is unlawful, and unauthorized, and such surrender or transfer, confers no rights upon the corporation to which it is made.—*Hirshel on C. C. & S. of Corp.* p. 341, 342; Morawitz on Corp. Secs. 413, 416; *Stewart v. Transportation Co.*, 17 Minn. 372-398; *Block v. Canal Co.*, 24 N. J. Eq. 456; *Zabriskie v. R. R. Co.*, 18 N. J. Eq. 178; *Abbott v. Rubber Co.*, 33 Barb. 578; *Middlesex R. R. Co. v. Boston etc. R. R. Co.*, 115 Mass. 347. An act which a corporation cannot itself do in the first instance, cannot be validated by its subsequent ratification.—4 on Corporations, Secs. 5287-8, 5968; *Steiner v. Steiner Land Company*, 120 Ala. 120-139. The pleas in this case fail to show a compliance with the provisions of section 1170, or any other section of the Code of 1896 relied on by defendant.—*Arrington v. S. & W. R. R. Co.*, 95 Ala. 434; *Brickley v. Kennan*, 60 Ala. 293. Grants to corporations are to be construed strictly and the corporation takes nothing by implication, either as against the power of making the grant or against other corpora-

tions or individuals. Such grants will not be sustained by doubtful words, and ambiguity vitiates them.—*Chas. River Bridge v. Warren Bridge,* 11 Peters 1420; 9 L. ed., page 773, and note on page 774; *Beaty v. Lessee of A. Knowler,* 4 Peters 153, 7 L. ed. 813 and note; *Pearsall v. Great Northern Ry. Co.,* 161 U. S. p. 648, Book 40 L. Ed. p. 838; *L. & N. R. R. Co. v. Ky.,* 161 U. S 677, 40 L. ed. p. 40 L. ed. p. 838. Neither the Statute of Limitations nor the rule that carries title or right by adverse possession, nor the doctrine of staleness, estoppel, prescription, laches or acquiescence can be invoked as against a proceeding by the State. Lapse of time never bars the State from enforcing its rights. *Tempus non occurrit regi.*—*Webb v. City of Demopolis,* 95 Ala. 116, 134; *Reed v. Mayor & Aldermen of Birmingham,* 92 Ala. 329; *Olive v. State,* 86 Ala. 88; *Jersey City v. M. C. & B. Co.,* 12 N. J. Eq. 557, 561; *Com. v. Albarger,* 1 Whart. (Pa.), 469; *Sims v. Chattanooga,* 2 La. (Tenn.) 694; 2 Dillon on Municipal Corp., §§ 669, 675; Elliott on Roads & Streets, 667, Marg. p. 490; *People v. Gary,* 196 Ill. 310, 327; *People v. Pullman Palace Car Co.,* 175 Ill. 125, 160-164; *Catlett v. People,* 151 Ill. 16, 23; *Com. v. Allen,* 128 Mass. 308, 310; *State v. Wofford,* 90 Texas, 514, 520; *United States v. Nashville etc.,* 118 U. S. 83; 30 L. ed. 81; *Goodtitle v. Baldwin,* 11 East, 485, 495. Estoppels against the State cannot be favored. They may arise from an express grant, but cannot arise from the laches of its officers; not upon the notion of extraordinary prerogatives, but upon a great public policy.— *State ex rel Lott v. Brewer,* 64 Ala. 287; *Magee v. Hollett,* 22 Ala. 699; *U. S. v. Kirkpatrick,* 9 Wheat. 735, 6 L. Ed. 203; *Com. v. Pittsburg Forge & Iron Co.,* 2 Pears. (Pa.) 374; *State v. Harris,* 52 Vt. 216, 223, 4, 6; *Stone v. Sharpe,* 27 Minn. 38, 39; *Rex. v. Wardroper,* 4 Barr. 1963, 1965; *Stoughton v. Baker,* 4 Mass. 522, 528; *Bus-*

*well on Limitations,* §§ 97 and 98; *George v. Central of Ga. Ry. Co.,* 101 Ala. 607, 623-6; 365-6; *People ex rel Maloncy v. Pullman Palace Car Co.,* 175 Ill. 125; 64 L. R. A. 366, 383. It has been expressly held that the lapse of time constitutes no bar to a proceding by the State in the nature of *quo warranto.*—High on Ex. Legal Rem. (3 ed.), § 621; *State v. Pawtuxet T. Co.,* 8 R. I. 521; 94 Am. Dec. 123; 2 Spelling on Extra. Relie, §§ 1862, 1863; *State v. F. & C. Co.,* Ohio 31, N. E. 658; *People v. Ft. Wayne & E. R. R. Co.* (Mich.), 52 N. W. 1010; *Com. v. Allcn,* 128 Mass. 308; *People v. Stanford,* 77 Cal. 360; *Catlctt v. People,* 151 Ill. 16, 253-.

DENSON, J.—On account of the difficult questions which are presented for consideration by this record, as well as the vast importance of the cause itself, the writer approaches the task of preparing the opinion with great diffidence. However, counsel on both sides have ably argued the cause at the bar, and have shown considerable industry and marked ability in briefing it. This has been most helpful to us, and for it all we make grateful acknowledgment.

The action is one in the nature of quo warranto, brought by the state of Alabama, on the relation of Henry B. Gray, against the Louisville & Nashville Railroad Company. The information, after showing that the South & North Alabama Railroad Company was incorporated or chartered in 1854 by a special act of the General Assembly of Alabama for the purpose of constructing, maintaining, and operating a railroad within the state of Alabama between Montgomery and Decatur, and after showing that the Louisville & Nashville Railroad Company is a foreign corporation organized under and by virtue of the laws of the state of Kentucky, and is doing business in the city and county of Montgomery,

Ala., charges in a single paragraph, as follows: "Third. That at the time of filing this information or complaint, and for many years prior thereto, the said Louisville & Nashville Railroad Company, being such foreign corporation, is exercising and has exercised the franchise or franchises granted by the General Assembly of the state of Alabama to the said South & North Alabama Railroad Company under and by virtue of the said act hereinabove referred to granting said charter, or is exercising the franchise or franchises of running a railroad and collecting tolls for the same between Montgomery, Ala., and Decatur, Ala., without any warrant or authority of law whatever; that in so oprating said railroad or exercising said franchise or franchises it is and has been unlawfully and without authority of law using, enjoying, and usurping the rights, privileges and franchises granted by the General Assembly of the state of Alabama, to a domestic or resident corporation, towit, the South & North Alabama Railroad Company, or has been using, enjoying, and usurping a franchise or franchises which have not been granted to any person or persons by the state of Alabama; that in the use, enjoyment, or usurpation of said rights, privileges, and franchises the said Louisville & Nashville Railroad Company, being a foreign corporation as aforesaid, is engaged in doing those things that are unauthorized by the laws of the state of Alabama, and which are unlawful under the laws of the state of Alabama, and is exercising and has exercised a privilege or privileges, franchise or franchises, within the state of Alabama, without any warrant or authority of law." The prayer of the information is that "a writ of quo warranto or other appropriate writ be directed to the Louisville & Nashville Railroad Company, commanding it to appear and show under what warrant or authority of law it exercises the franchise or franchises of op-

erating and maintaining a railroad in the state of Alabama between Montgomery and Decatur, and to show cause, if any it can, why it should not be ousted therefrom." A further prayer is for judgment against the Louisville & Nashville Railroad Company, "and that it be declared not entitled to the use, enjoyment, or exercise of the franchise or franchises which have heretofore been granted by the General Assembly of the state of Alabama to the South & North Alabama Railroad Company or to exercise the franchise or franchises to maintain and operate a railroad within the state of Alabama between Montgomery and Decatur, and that the Louisville & Nashville Railroad Company may be ousted from the use and exercise of the said franchise or franchises."

This information is attacked by demurrer, and the relator (appellee) insists that, the proceedings having been instituted for the purpose of ousting the respondent from usurpation, and not for the purpose of forfeiting a charter, the information constitutes no part of the pleadings; that it is not intended to tender an issue of fact, but its office is simply to furnish the court the information in reference to the alleged usurpation; and, therefore, that it cannot be the subject of attack by demurrer. Whatever may have been the common law in respect to this contention, our statutory system in respect to quo warranto proceedings has supplanted the common law, and constitutes "the only system of laws now obtaining in this state touching the remedy of quo warranto, or information in the nature of quo warranto; and a quo warranto proceeding which does not meet the statutory requirement as to parties and procedure cannot be maintained."—*State ex rel. Fitts v. Elliott,* 117 Ala. 172, 23 South. 43; *State ex rel. Johnson v. Mayor, etc.,* 142 Ala. 661, 38 South. 802; *State ex rel. Johnson v. Southern B. & L. Asso.,* 132 Ala. 50, 31 South. 875.

[Louisville & Nashville Railroad Co. v. The State, ex rel. Gray.]

Our system of laws in regard to quo warranto is contained in chapter 94 of the Code of 1896 (sections 3417-3439, pp. 966-970). It seems, from a study of the system, too clear for argument that the information or complaint must be regarded, under the statutes, as the first step in the pleadings—as a part of the pleadings.—*State. ex rel. Johnson v. Southern B. & L. Asso., supra.* Neither of the sections composing chapter 94 makes any distinction in the proceedings, whether the action be commenced for forfeiture or for usurpation; and we find that section 3428 prescribes: "The complaint [information] in such action must concisely and clearly set forth the act or omission complained of." It was within legislative competency to prescribe this rule, and, not having shown any distinction in this respect between actions for forfeiture and actions for usurpation, the courts are not authorized to draw any, but should apply the rule to all informations alike. It follows that the information must be regarded as pleading, and may be the subject of demurrer for failure to comply with the requirements of the statute.

The point is made by the demurrer that the information is indefinite and uncertain as to what franchise or franchises the defendant has been using, enjoying, and usurping. There can be no doubt that the information alleges conclusions of law and fact as constituting the offense or usurpation on the part of the defendant; and, while this form of pleading ordinarily may be permissible under our system, it will be observed that the acts alleged to have been, and as being, committed by the respondent, and which are relied on as constituting usurpation, are set forth in the alternative. In other words, the relator shifts his right of action from one ground to another in the same count. He states several acts of usurpation in the alternative or disjunctive, "so that it is

impossible to say upon which of the two or more substantive averments he relies for the maintenance of his action." Again, there is confusion and obscurity as to the ground upon which the relator bases his cause of action, or of what he would have the respondent ousted, so that the respondent is not clearly informed of the matter to be put in issue.—*Highland, etc., R. R. Co. v. Dusenberry*, 94 Ala. 413, 419, 10 South. 274. It is not objectionable to rely on two or more grounds or usurpation in one information; but each ground should be stated in a separate count or paragraph, in order to attain that perspicuity and certainly which is required by the statute in such proceedings.—Code 1896, § 3428. As is said in the case last cited above: "Inextricable confusion of issues would result from the blending in one count of a number of distinct breaches of duty as independent grounds of recovery, to be chosen from and relied on at the election of the plaintiff." And in *State ex rel. Johnson v. Southern B. & L. Ass'n.*, 132 Ala. 50, 54, 31 South. 375, a quo warranto proceeding, it seems to be strongly intimated if not directly held, that the rule in respect to clearness or precision of statement in pleading should, on account of the requirement of the statute (section 3428), be more strictly applied to information than to pleadings in ordinary cases. The demurrer on the ground under discussion should have been sustained.—*L. & N. R. R. Co. v. Duncan & Orr*, 137 Ala. 454, 34 South. 988; *Southern Ry. Co. v. Bunt*, 131 Ala. 591, 32 South. 507; *Richmond, etc., Railroad Co. v. Weems*, 97 Ala. 270, 12 South. 186.

The other point made by the demurrer to the information, and which is pressed upon our attention here, is "that the operation of a railroad in Alabama by a foreign corporation having the power under its charter to operate railroads in Alabama, after said corporation has complied with the laws of Alabama authorizing foreign

[Louisville & Nashville Railroad Co. v. The State, ex rel. Gray.]

corporations to do business in Alabama, is not the exercise of such a franchise as gives this court jurisdiction to try its right thereto by quo warranto proceedings, and said petition does not allege that the defendant is without such charter power, nor that it has not complied with the laws of Alabama authorizing foreign corporations to do business in Alabama." It is sufficient to say of this ground of demurrer that the information avers that the operation of the railroad by the defendant within the state of Alabama was and is without any authority of law; and it was not incumbent upon the relator to go further, and allege that the defendant was without the charter power, nor that it had not complied with the laws of Alabama applicable to foreign corporations doing business. If the defendant desired to present the question as to whether a foreign corporation, with charter powers granted by the Legislature of its parent state to operate a railroad in Alabama, may so operate a railroad in Alabama, without express charter power granted by the Legislature of this state or under its general laws, it might do so in its answer to the writ; and we find that the defendant adopted this course.

After the demurrer to the information was overruled, the defendant at different times filed 17 special pleas or answers, alleging facts and circumstances which are claimed to show a right in the defendant to operate the South & North Alabama Railroad, and denying that it is exercising the franchise or franchises mentioned in the petition. Demurrers were interposed to each of these pleas. These demurrers were sustained, and, the defendant declining to plead further, a judgment of ouster was rendered. The defendant has appealed from this judgment. It would be unprofitable to attempt an analysis of the allegations of the different pleas, and the material facts will be stated as they appear by the pleadings as a whole.

The Louisville & Nashville Railroad Company is a foreign corporation, organized and existing under the laws of the state of Kentucky, with power and authority to construct, maintain, and operate railroads. By an act passed in 1878 (1 Acts 1877-78, p. 342, c. 278), in the preamble of which the South & North Alabama Railroad Company is specially mentioned, the charter was amended so as to authorize the "president and directors, with the assent and approval of a majority in interest of the stockholders of the company, present or represented at any annual or called meeting thereof, to operate, lease, or purchase, upon such terms as they deem best, any railroad in any other state or states deemed necessary for the protection of the interests of the stockholders." This amendment to the charter was duly accepted by the stockholders and directors, and the company has ever since been acting thereunder, and exercising the authority and powers therein and thereby conferred upon it. By an act passed in 1880 (1 Acts 1879-80, p. 61, c. 80) the charter of the Louisville & Nashville Railroad Company was further amended so as to give the company power and authority to purchase and hold a majority in amount of the capital stock of any railroad company and companies chartered by any other state. This act provided that it should be accepted by a majority in interest of the stockholders of the company present or represented by proxies at any annual or called meeting. This was done, and the company has ever since exercised the power conferred upon it by this act with the assent of its stockholders. Commencing on the 24th day of March, 1887, the defendant has done all that foreign corporations are required to do by the Constitution and laws of Alabama to entitle it to do business in the state.

The South & North Alabama Railroad Company was organized under a charter granted by the Legislature

of the state of Alabama in 1854 (Acts 1853-54, p. 318), empowering it to construct and operate a railroad within the state between the city of Montgomery and the city of Decatur. By this charter the company was empowered among other things, "to make any lawful contract with any other railroad corporation in relation to the interest of the said company, and also to make joint stock with any other railroad corporation." This charter was several times amended: First, by an act approved February 23, 1860 (Acts 1859-60, p. 313); again, by an act approved December 30, 1868 (Acts 1868, p. 494); and again, by an act approved February 26, 1872 (Acts 1871-72, p. 325). All these amendments (the provisions of which it is not deemed necessary to state) were duly accepted by the stockholders of the company. Prior to the year 1871, the South & North Alabama Railroad Company had commenced and attempted to construct its railroad under its charter between Montgomery and Decatur, but by reason of the lack of necessary means and credit it failed to complete the road and was unable to do so. This was when the relation between the two railroads which is complained of in the petition commenced. At the time when the South & North Alabama Railroad Company found itself unable to build its road, the Louisville & Nashville Railroad Company, which owned and operated a railroad from the city of Louisville, Ky., to the city of Nashville, Tenn., controlled and was operating another road, extending from Nashville to Decatur. in this state, under a lease dated May 4, 1871. These two roads formed a continuous line, and connected with the road of the South & North Alabama Railroad Company at Decatur. It may also be stated in this connection, although the fact may not be very material, that since January 12, 1881, the Louisville & Nashville Railroad Company has been operating a railroad in this

state from Mobile to Montgomery under a lease, and since December 17, 1900, has been operating this railroad as owner. These three lines of railroad—the line from Louisville to Nashville, the line from Nashville to Decatur, and the line from Mobile to Montgomery—together with the South & North Alabama Railroad, form a continuous line of railroad. The pleas go further, and show that the Louisville & Nashville Railroad Company is operating a continuous through line of railroad of which the South & North Alabama forms a part, between New Orleans, Louisville, Cincinnati, and St. Louis.

But, going back to the year 1871, when the South & North Alabama Railroad Company was financially unable to complete its road, the Louisville & Nashville Railroad Company, which was then operating a continuous line of railroad from Louisville, Ky., to Decatur, in this state, was desirous of forming a connection with some road south; and, believing that the completion of the road of the South & North Alabama Railroad Company would afford that opportunity, if it could be assured that that road would be operated in harmony with its own road, it agreed to construct the road of the South & North Alabama Railroad Company, provided it could obtain a majority of the stock of that company, and be assured that its control of the majority of the stock, and therefore its power to control the policy and operation of the railroad, should not be lost by an increase of the capital stock. With this end in view, a contract was entered into by the two companies on May 10, 1871. By the terms of this contract the Louisville & Nashville Railroad Company undertook to complete the construction of the road of the South & North Alabama Railroad Company, charging therefor the actual cost price, to be paid in preferred stock of the latter company at 40 cents on the dollar. It was provided, among other things, that

the South & North Alabama Railroad Company should issue to the Louisville & Nashville Railroad Company $2,000,000 of preferred stock, if legally entitled to do so, and that the latter company should have a right to vote this stock at all meetings of the stockholders. It was further provided that the South & North Alabama Railroad Company should obtain the legal authority to issue this preferred stock. Thereupon the Louisville & Nashville Railroad Company furnished the necessary means and completed the construction of the road between Montgomery and Decatur shortly before October 1, 1872, on which day the road was opened for transportation of passengers and freight. But when the construction was completed the South & North Alabama Railroad Company did not have the means to equip the road, and was not in a financial condition to accept it from the Louisville & Nashville Railroad Company and operate it with its own resources. To induce the Louisville & Nashville Railroad Company to operate the road in conjunction with its own lines, it elected two officers of that road on its board of directors, and these officers were made, respectively, president and vice president and general manager of the South & North Alabama Railroad Company. These officials appointed several of the subordinate officers of the Louisville & Nashville Railroad Company to like offices of the South & North Alabama Railroad Company, for the purposes of economy and convenience in handling the joint traffic and other business of the two roads, but employed, as operating traffic and maintenance officers and agents persons who were not in any way connected with the Louisville & Nashville Railroad Company. The operations of the South & North Alabama Railroad Company were conducted in its own name. The earnings of the road were not sufficient to pay expenses and interest, and the

necessary funds were advanced by the Louisville & Nashville Railroad Company, and repaid to the extent of the earnings of the road. Monthly and annual accounts were made by the president to the directors of the road, and by the directors to the stockholders. The road continued to be operated in this way for a long time—nearly 15 years.

Thereafter, and for more than 20 years prior to the commencement of this suit, the Louisville & Nashville Railroad Company became and was the owner of a large majority of the common stock of the South & North Alabama Railroad Company, in addition to the $2,000,000 of preferred stock, and also became and was the owner of, or indorser upon, nearly all of its then outstanding bounded indebtedness. The formality of appointing the subordinate officers of the Louisville & Nashville Railroad Company was sometimes discontinued, and transportation and bills of lading were thereafter issued in the name of the former company, and an officer of that company was from time to time elected as the principal operating officer of the South & North Alabama Railroad Company, which continued to be operated as before; the same character of expenses being charged to it and the same earnings being credited to it, so that the only change was in the name under which the operations of the road were conducted. Daily accounts of the operation of the railroad were kept, and monthly and annual accounts were made and submitted to the secretary of the South & North Alabama Railroad Company, and were furnished to the president of the company, and by him rendered to the board of directors, and by them submitted to the stockholders. In this manner the railroad has been continuously operated for 20 years by the Louisville & Nashville Railroad Company. A large indebtedness was created, from year to year, in the opera-

tion and improvement of the railroad, and these debts were from time to time passed upon and approved by the directors and stockholders of the South & North Alabama Railroad Company. Bonds were issued to the amount of $12,000,000, $8,000,000 of which were indorsed by the Louisville & Nashville Railroad Company, and $4,000,000 owned by it, while it also became entitled to $4,000,000 accumulated dividends. The operation of the South & North Alabama Railroad Company by the Louisville & Nashville Railroad Company was open and notorious, and publicly and generally known by the officers and citizens of the state of Alabama, during the entire time that it was so operated. During the whole period of this operation of its railroad by the Louisville & Nashville Railroad Company, the South & North Alabama Railroad Company has kept up and maintained its corporate organization. It has had its board of directors and other officers and necessary agents. Its stockholders have annually held their regular meetings, and have regularly, from year to year, elected a board of directors, which has convened in meetings from time to time as the interests of the company required, and transacted such business as was necessary to further the interests of the company. A number of additional facts are stated for the purpose of setting forth the equities of the case and appealing to the discretion of the court; but it is believed that the foregoing general review of the facts, as they are set forth in amended plea 16 and plea 17, is sufficient for our purpose.

The pleas filed by the respondent which set up the foregoing facts are attacked by the relator (appellee) on the grounds of duplicity, and that they do not set out facts showing a justification or defense; and it is urged that the demurrers interposed to the pleas are sustainable on these grounds alone. In respect to the first point,

that the pleas are duplex, it is sufficient to say that "under our system of pleading duplicity in the allegations of a plea is no ground for demurrer, except as to pleas in abatement. This defect was, at common law, the subject of special demurrer; and special demurrers are now abolished by statute, except, in effect, as to dilatory pleas."—*Lewis v. Lee County,* 66 Ala. 480; *Cannon v. Lindsey,* 85 Ala. 198, 202, 3 South. 676 ,7 Am. St. Rep. 38. Appellee relies on the case of *Capital City, etc., Co. v. State ex rel., etc.,* 105 Ala. 406, 18 South. 62, 29 L. R. A. 743. An examination of the opinion in that case will show that plea 1 was under discussion, and that the plea was condemned, not because it was duplex, but because it failed to deny the ground for forfeiture alleged in the information. What was said by the court in respect to duplicity was not in condemnation of the plea on that ground, for that proposition was not before the court for consideration; but it was said by the court that "to give the plea the construction that it was intended in the latter clause to aver that defendant had furnished pure water all the while, would make the plea duplex and inconsistent with itself." Evidently this was said argumentatively, for the learned judge who wrote the opinion was well aware of the fact that duplicity is no longer a ground of demurrer, except in dilatory pleas. So it must be held that the insistence that the pleas are duplex cannot be sustained.

After due consideration, it is thought that we may, without putting either side to this controversy to any disadvantage, pretermit discussion of the case in any other phase than that which is given it by plea 16 as amended and plea 17. In other words, as will be discoverable from the further discussion of the case and the conclusion which will follow that discussion, it is our opinion than these two pleas present the meritorious and

[Louisville & Nashville Railroad Co. v. The State, ex rel. Gray.]

full defense to the action; and it is unnecessary to incumber the opinion with a discussion of propositions which might in the end be merely abstract. Futher, while these pleas may contain redundant statement, they are not subject to the demurrers made. Stated broadly, the question for decision is whether the Louisville & Nashville Railroad Company is entitled to operate the railroad of the South & North Alabama Railroad Company under the contract or arrangement set forth in the pleas.

There can be no question that the charter of the Louisville & Nashville Railroad Company, as amended, empowers it to operate any railroad in this state, so far as the state of Kentucky can confer that power. In an amendment to its charter it was authorized "to operate, lease, or purchase, upon such terms or in such manner as they (its president, directors, and stockholders) may deem best, any railroad in any other state or states deemed necessary for the protection of the interests of the stockholders." There also can be no question that this foreign railroad corporation, which has done all that was required of it by the laws of this state in order to do business therein, is, by virtue of sections 1170 and 1117 of the Code of Alabama of 1896, empowered to enter into the contract or arrangement described in the pleas with any connecting railroad in this state which is itself entitled to avail itself of the benefits of these statutory provisions. We are not prepared to say that this railroad can enter into any contract relations contemplated by these provisions of our statutes with a railroad company of this state which is not itself empowered to enter into the same relation. The learned judge of the city court (as shown by his opinion embodied in the brief of appellee's counsel) took the view that it was not enough that the contract or arrangement

14 R

which was entered into by the Louisville & Nashville with the South & North Alabama Railroad Company was within the power of the former company, but that it must also appear that it was within the competency of the South & North Alabama Railroad Company as well. Since it is not necessary to determine this question, in view of the conclusion at which we have arrived, it will be assumed that the decision of the city court upon this question was correct. It is, therefore, necessary to ascertain the powers which the South & North Alabama Railroad Company enjoys under its charter proper, and also the powers which it possesses, if any, under the general statutes of Alabama.

. The act of 1854 (Acts 1853-54, p. 318) under which the South & North Alabama Railroad Company was organized gave "permission to make any lawful contract with any other railroad corporation, in relation to the interests of said company, and also to make joint stock with any other railroad corporation." It is contended by counsel for appellant that this provision of its original charter empowered the company to make the arrangement with the Louisville & Nashville Railroad Company which is involved in this controversy. This proposition is vigorously assailed by counsel for the appellees, and was declared by the judge of the city court to be untenable. This is also a question which we are not called upon to decide, and it may be assumed, for the purposes of this opinion, that the power claimed was not conferred upon the South & North Alabama Railroad Company by its charter proper. If it is conceded that the original charter of the South & North Alabama Railroad Company, conferred by the special act under which the company was organized and by the amendments to that act, does not confer authority upon the company to enter into a contractual arrangement

by which the operation of the railroad is intrusted to a foreign corporation, it remains to be determined whether authority can be and has been derived from sections 1170 and 1171 of the Code of Alabama of 1896. For convenient reference, the provisions of these sections of our statutes will be transcribed.

Section 1170 is as follows: "A corporation, chartered under the laws of this or any other state heretofore or hereafter created for the purpose of building, constructing, or operating a railroad, may, at any time, by means of subscription to the capital of any other corporation or company, or otherwise, aid such corporation or company in the construction of its railroad, for the purpose of forming a connection with the road owned by such corporation or company furnishing aid; or any railroad corporation, organized in pursuance of the laws of this or any other state, may lease or purchase any part or all of any railroad constructed by any other corporation or company, if the lines of such road are continuous or connected, upon such terms and conditions as may be agreed on between the corporations or companies respectively; or any two or more railroad corporations or companies, whose lines are so connected, may enter into any arrangement for their common benefit, consistent with, and calculated to promote the objects for which they were created; but no such aid shall be furnished, nor any purchase, lease, or arrangement, perfected, until a meeting of the stockholders of each of such corporations or companies has been called by the directors thereof, at such time and place, and in such manner as they shall designate; and the holders of a majority in value of the stock of such corporation or company, represented at such meeting, in person or by proxy, and voting thereat, shall have assented thereto."

Section 1171 is as follows: "Any railroad company, incorporated by the laws of any other state and now owning or operating, or which is or may be authorized to own or operate, by lease or otherwise, any railroad in this state, is authorized and empowered, upon the resolution of its board of directors, to aid any railroad company incorporated under any general or special law of this state, in the construction, renovation or operation of its railroad, by the endorsement or guaranty of its securities which have been or may be issued for such purpose, in such manner as may be agreed upon by the board of directors of the contracting companies, or by leasing, or by guaranteeing the rentals of any lease of any such railroad, on such terms as may be agreed upon by the respective boards of directors."

In contending that these sections of the Code can have no application to the South & North Alabama Railroad Company, the appellees invoke the doctrine of the *Dartmouth College Case,* 4 Wheat. (U. S.) 518, 4 L. Ed. 629. This railroad was incorporated under a special act passed by the General Assembly in 1854, and thereafter the charter was several times amended by special acts with the consent of the corporation. No power to alter or amend the charter was reserved in any of these acts. It is argued that since the charter was granted prior to the adoption of the Constitution of 1875, which subjects the charters of corporations to repeal or amendment by the Legislature, it could not be altered or amended by any act of the Legislature, and no general laws passed subsequent to the granting of the charter could be made applicable to it. This may be conceded, so far as any act of the Legislature alone is concerned. Prior to the adoption of the Constitution of 1875, the General Assembly in the absence of a reserved power, could not amend or

modify the corporate charters granted by it, in any material respect; and, since the contract obligation involved in the grant of a charter is protected by the Federal Constitution, the power to amend or modify charters which had been granted to corporations could not be conferred upon the state legislative body by the Constitution of 1875. But, although a corporate charter is a contract within the Federal Constitution prohibiting the impairment of the obligation of contracts, it is subject to the ordinary rules governing subsequent modifications of contracts by the parties. The inviolability of the charter of a corporation from impairment by legislative action, in the absence of the reservation of power to revoke, change or modify the charter, may be bargained away by the corporation.—*Mobile, etc., R. Co. v. Steiner*, 61 Ala. 559, 592, and authorities there cited. A corporation may even consent to a destruction of the corporate life by forfeiture and surrender.—*Mobile, etc., R. Co. v. State*, 29 Ala. 573, 586. And a corporation may be brought within the operation of laws enacted after the granting of the charter, by accepting them as amendments to its charter. It appears in this case that the charter of the South & North Alabama Railroad Company was thrice amended by special acts which were accepted by the corporation. Likewise a corporation may be brought within the operation of a general law, with the consent of the corporators.

The Constitution of 1875, was expressly designed to effect this result with respect to corporations which were beyond legislative control.. It not only subjects the charters of corporations existing at the time of the adoption of the Constitution, whose charters were revocable, and the charters of corporations thereafter created, to the power of the General Assembly to alter, revoke, or

amend, but it clearly contemplates the bringing of the charters of corporations which are beyond legislative control, because no right to amend or modify their charters was reserved in the acts creating them, within that and other powers of the Legislature. Section 3 of article 14 provides that "the General Assembly shall not remit the forfeiture of the charter of any corporation now existing, or alter or amend the same, or pass any general or special law for the benefit of such corporation, other than in execution of a trust created by law or by contract, except upon condition that such corporation shall thereafter hold its charter subject to the provisions of this Constitution." Section 25 of article 14 provides that "no railroad, canal, or other transportation company, in existence at the time of the ratification of this Constitution, shall have the benefit of any future legislation by general or special laws, except on the condition of complete accepance of all the provisions of this article." Both of these provisions contemplate the enactment of general laws for the benefit of corporations whose charters protect them from legislative invasion of the powers granted, subject to the condition that these corporations, in order to avail themselves of the benefit of such laws, waive the inviolability with which they are invested and subject themselves to the power of control conferred upon the General Assembly by the Constitution. It is not true that merely because a corporate charter was granted before 1875, and no right to alter or amend was reserved, no general law passed subsequent to the granting of the charter can be made applicable to the corporation. A general law which is fairly applicable to all corporations of the class to which such a corporation belongs, may be made applicable to it, by the action of the corporation, in accepting and holding

its charter, subject to the provisions of the Constitution. Sections 1170 and 1171 of the Code of 1896 are general statutes, and their provisions are fairly applicable to all corporations of the class to which the South & North Alabama Railroad Company belongs. So it follows that this railroad company, although organized under a charter granted long before 1875, which could not be modified without the consent of the corporation by the General Assembly, could nevertheless enjoy the benefits of these statutes by accepting the provisions of article 14 of the Constitution and thereby bringing its charter powers within legislative control.

But the question arises whether this company has accepted the provisions of the Constitution. It does not appear that there has been any express, formal, and recorded act of acceptance, either by the board of directors or the stockholders. It must therefore be determined whether a formal acceptance is necessary. By section 25 of article 14 of the Constitution of 1875 a company of the class to which this railroad belongs cannot have the benefit of future legislation "except on the condition of complete acceptance of all the provisions of this article." It will be observed that no particular form or mode of acceptance is prescribed. In this respect the provision differs from similar provisions in the Constitutions of other states which require the filing of an acceptance in the office of the Secretary of State.— Const. Idaho, art. 11, § 7; Const. Ky. § 190; Const. Mont. art. 15, § 8; Const. Utah, art. 12, § 2. The Texas Constitution contains a provision which in this respect, is substantially the same as the provision in our Constitution.—Const. Tex. art 10, § 8. But it does not appear that the provision has been construed by the courts of that state in any reported case, so that we approach the

question without the aid of previously expressed judicial opinion. It is safe to say that since no formal act of express acceptance is prescribed by the Constitution, as is done in the Constitutions of other states, no formal act indicating express acceptance is necessary. If we are to construe this provision as requiring some formal act of express acceptance, we should be at a loss to determine the principle upon which the court could proceed in deciding just what formal act would be sufficient to constitute an acceptance. But it is enough to say that we are unable to read into the Constitution a requirement which was not put there by its makers.

The phraseology of the provision does not require any express acceptance. The provision says, in effect, that no company of the kinds mentioned shall have the benefit of any future legislation, except on the condition of the complete acceptance of all the provisions of article 14. It is just as reasonable to understand this to mean that a company which avails itself of and enjoys the benefits of future legislaion does so on condition that it completely accepts all of the provisions in the article as it is to understand it to require some express act of complete acceptance, the nature of which is not even remotely indicated. In other words, the acceptance and enjoyment of the benefits of a law, which is of such a nature that it may become applicable to the corporation if it so desires, operates itself as "a complete acceptance of all of the provisions" of the article. If this is so, a corporation which accepts the benefits of a general law which is fairly applicable to all corporations of the class to which it belongs impliedly accepts all of the provisions of article 14 of the Constitution. In *State v. Montgomery Light Co.*, 102 Ala. 594, 15 South. 347, it was held that a valid acceptance by a corporation of the ben-

efits of a law enacted in pursuance of section 3 of article
14 of the Constitution implies acceptance upon the con-
dition named in the Constitution. This is a reasonable
view. It has long been the policy of this and other states
to encourage corporations to divest themselves of the in-
violability with which they were clothed by the doctrine
declared in the Dartmouth College Case, and to bring
themselves within the control of the legislative power.
This policy is advanced by holding out to corporations
which hold charters that are not subject to any reserved
right of the state to modify in material respects the ben-
efit of statutes containing provisions which will induce
them to surrender their immunity from legislative con-
trol. And in view of this long-established policy it is not
to be presumed that the Constitution makers intended
to place obstacles in the way of accomplishing this re-
sult by prescribing inconvenient formalities.

The conclusion that it was wholly reasonable for the
Constitution to provide that an acceptance of the bene-
fits of a general law by a corporation of the class with
which we are dealing constitutes an acceptance of the
provisions of the Constitution is in a measure strength-
ened by the fact that this very thing is expressly done
in the Constitution of Mississippi. Section 179 of that
Constitution contains substantially the same provisions
as those found in section 3 of article 14 of our Constitu-
tion, and then adds the following: "And the reception
by any corporation of any provision of any such laws,
or the taking of any benefit or advantage from the same,
shall be conclusively held an agreement by such corpora-
tion to hold thereafter its charter and franchises under
the provisions hereof." Even when formal and affirma-
tive acts, indicating an express acceptance by corpora-
tions of amendments to their charters by which rights

and powers under their existing charters are relinquished, have been prescribed, it has been held in some cases that the prescribed mode of acceptance is not the only one in which a valid acceptance may be indicated and effected. in *Zabriskie v. Cleveland, etc., R. R. Co.,* 64 U. S. 381, 16 L. Ed. 488, the essential facts of the case, so far as the question under discussion here is concerned, were that in 1852 the state of Ohio enacted a law for the creation and regulation of corporations which contained a provision that "any existing corporation might accept any of its provisions, and when so accepted, and a certified copy of their acceptance is filed with the Secretary of State, that portion of their charters inconsistent with the provisions of this act shall be repealed." The railroad company, without signifying its acceptance in the prescribed manner, proceeded to exercise a right given in one of the provisions of the act, by indorsing a guaranty upon certain bonds of another railroad company. In a suit by a stockholder of the Cleveland, etc., Railroad Company to enjoin the directors from paying interest on the bonds thus guaranteed, it was held that as between the parties to the record the acceptance of the act might be inferred from the corporators themselves. The corporation, having executed the powers and claimed the privileges conferred by the statute, could not exonerate itself from responsibility by asserting that it had not filed the evidence required by the statute to evince its decision. In *Augusta, etc., R. Co. v. City Council of Augusta,* 100 Ga. 701, 28 S. E. 126, it appears that the plaintiff railroad company had been incorporated by a special act in 1866 "for the full term of 30 years." In 1889 the Legislature passed an act to continue the charter in force for a further period. This act, among other things, declared that the company

might "at any time, by a majority vote of the stockholders surrender their present charter before the expiration thereof and accept this new charter, with all its privileges and liabilities." The question arose as to whether the renewal act had been accepted. The company had not pursued the method of acceptance pointed out in the act itself, viz., by surrendering the old charter before its expiration and accepting the new one with all its privileges and liabilities. It had, however, made an application, under and by virtue of the renewing act, to the city of Augusta, in which the railroad was located, for certain valuable privileges and franchises, which it obtained, used, and enjoyed, and afterwards sold to another corporation. It was held that the method prescribed by the renewing act was not the exclusive manner in which the new charter could be accepted. The same result was accomplished by the application to the city council.

Even though these decisions may not have any very direct bearing on the question under consideration, they have a persuasive value, and tend to confirm the belief that it is not going too far to hold that no formal act of acceptance was necessary in order to bring the South & North Alabama Railroad Company within the article of the Constitution relating to corporations. If the implied acceptances in these cases were sufficient under the statutes prescribing a formal act of express acceptance, clearly the conduct of this company in availing itself of the benefits of general statutes is a sufficient acceptance within the meaning of the broad and general provision of our Constitution. Having, then, reached the conclusion that the South & North Alabama Railroad Company could, by an acceptance of the benefits of sections 1170 and 1171 of the Code of 1896, bring itself within the purview of section 25 of article 14 of the Con-

stitution without any formal or express acceptance of the provisions of this article, it remains to be determined whether the company has ever availed itself of these statutory provisions. Upon this phase of the case very little need be said. A reference to the facts of the case (which are stated above and need not be repeated here) will show that there can be no question that the company has long exercised the authority and privileges conferred upon railroad companies by these provisions. It assumed the exercise of these powers, it is true, before these provisions were enacted; but it has continued to exercise the same powers after these provisions became laws, and the time when these powers were first exercised does not seem to be material.

But it is contended by appellee that it is not alleged in the pleas how the provisions of sections 1170 and 1171 were accepted by the stockholders of the South & North Alabama Railroad Company—whether at a meeting or otherwise. The appellee contends, in effect, that the mere fact that the managing agents of the South & North Alabama Railroad Company may have availed themselves of sections 1170 and 1171 of the Code of 1896 in their conduct of the affairs of the railroad is not sufficient to show an acceptance of these statutes by the stockholders. It is insisted that before the provisions of these statutes could be read into the charter of the company, which the Legislature had no reserved power to alter or amend, the consent of the stockholders, and of all of the stockholders, would be necessary. It is further insisted that in order to show an acceptance of these statutes as, in effect, an amendment of the charter of the company, which was a contract between the state and the company and the stockholders of the company, and therefore could not be altered or amended without the

[Louisville & Nashville Railroad Co. v. The State, ex rel. Gray.]

consent of all of the stockholders, there must have been some affirmative act on the part of the stockholders, and that, too, on the part of all of the stockholders, constituting an acceptance by them of these statutes. It is no doubt true that, when the state has not reserved the right to alter or amend a charter which it has granted, there is no power in the state either to restrict or to enlarge the corporate powers, except with the consent of the stockholders, and in some cases at least the consent of all of the stockholders may be necessary.—*Mobile, etc., R. Co. v. State,* 29 Ala. 586. And it is also true that it does not appear in this case that any express consent to the acceptance of the benefits of these statutes was given by the stockholders of the South & North Alabama Railroad Company.

But the question whether the stockholders have consented to an enlargement of or change in the corporate powers does not depend alone upon some affirmative act showing express consent. In *State v. Montgomery Light Co.,* 102 Ala. 594, 15 South. 347, it appears that a corporation which had been chartered by a special act in 1853 took the steps prescribed by statute to enlarge its powers pursuant to an act passed in 1888. All the stockholders did not join in the required petition, but in a quo warranto proceeding to annul the charter it was held that the express consent of all of the stockholders, by applying for the enlarged powers, was not necessary, but that a silent acquiescence by them in the enlargement of the corporate powers was sufficient. The reasoning of the court in that case is applicable to the question under consideration. The South & North Alabama Railroad Company commenced to avail itself of the powers and benefits conferred upon railroads by sections 1170 and 1171 of the Code of 1896 in 1871, over 30 years be-

fore the petition in this cause was filed, and continued to do so after these sections were enacted up to the present time. The arrangement of the Louisville & Nashville Railroad Company and the South & North Alabama Railroad Company was open and notorious, and generally known to the public, and must have been well known to the stockholders of the latter company. During the period of the operation of the road by the Louisville & Nashville Railroad Company the stockholders have regularly held their annual meetings, electing directors and passing upon accounts of the earnings of the road and upon debts incurred. No stockholder ever made any objection to the arrangement between the two companies until the relator made objection at a meeting in 1905. These and other facts stated in the pleas (16 and 17) present, not only a case where acquiescence on the part of the stockholders in the acts of the managing agents of the corporation may well be inferred, but a strong case of implied consent.

Under the circumstances, and considering the nature of these proceedings, it is impossible to hold that the acts of the managing agents of the corporation, in accepting the benefits of sections 1170 and 1171 of the Code of 1896, have not been ratified by the stockholders.—*State v. Montgomery Light Co.*, 102 Ala. 594, 15 South. 347; *Cole v. Birmingham Union R. Co.*, 143 Ala. 427, 39 South. 403. In *Com. v. Cullen*, 13 Pa. 138, 53 Am. Dec. 451, although it appeared as a matter of fact that the stockholders had not acquiesced in a change in the corporate powers by a statutory enactment, the court was strongly of the opinion that in a proper case a long acquiescence by the stockholders of a company in the acts and declarations of the managing officers recognizing the act as an amendment of the charter might consti-

[Louisville & Nashville Railroad Co. v. The State, ex rel. Gray.]

tute conclusive evidence of assent to it.  The court said:
"Anciently, indeed, it was supposed that, from the very
nature of an artificial corporate body, it could legally
manifest its acts and conclusions only by the use of its
corporate seal, affixed to a deed in pursuance of author-
ity previously given.  But this idea has long since given
away to the more reasonable doctrine that the act or as-
sent of a corporation may be inferred from such circum-
stances of commission or omission as would raise a
similar presumption in favor of or against a natural
person.  *  *  *  In this country, where private cor-
porations are very numerous, and constant use of their
privileges naturally engenders indolence in the creation
of regular evidence of corporate acts and negligence in
its preservation, the recognition of presumptions as le-
gitimate sources of proof was a legal necessity.  While,
therefore, a charter granted to persons who have not so-
licited it is said to be in fieri until after acceptance, yet
it is not indispensable to show a written instrument, or
even a vote acceding to the grant; for, unless the charter
expressly prohibited, every formality may be presumed
from a continual exercise of the corporate powers.  This
is also true of an assent to a new or additional charter
by an existing corporation, which may in like manner
be inferred from acts or omissions inconsistent with any
other hypothesis; and where the new grant is beneficial
in its aspect it is thought very little is required to found
a presumption of acceptance."—*Goodin v. Evans,* 18
Ohio, 150; *Bangor, etc., R. R. Co. v. Smith,* 47 Me. 34;
*Wetumpka, etc., R. Co. v. Bingham,* 5 Ala. 657.

It is further contended by counsel for the appellee
that the holders of a majority in value of the stock of
the South & North Alabama Railroad Company have
not assented to the arrangement entered into by the two

railroads at a meeting of the stockholders called by the directors as required by section 1170. This is true; but this provision is not contained in section 1171, and it seems that the relations existing between these companies at the time of the enactment of this section of our statutes receives ample recognition therein as a valid arrangement. However this may be, the objection that the assent of the stockholders prescribed in section 1170 was not given cannot be raised by the state in this proceeding. The state would, of course, protect a stockholder, through its judicial machinery, against the consequences of a disregard of this condition, if timely objection were made in a proper manner. But the state itself is not interested on its own behalf in having the prescribed meeting of the stockholders called. The provision was clearly intended especially for the benefit of the stockholders, who may waive compliance therewith, and who only may raise the objection of noncompliance. The formalities prescribed for the valid execution of a conveyance of property by a corporation are for the benefit of the shareholders of the company, and if they acquiesce others cannot complain.—*West Point M. Co. v. Allen*, 143 Ala. 547, 39 South. 351, 111 Am. St. Rep. 60. In *Barrett v. Pollak Co.*, 108 Ala. 396, 18 South. 615, 54 Am. St. Rep. 172, it was held that subdivision 7 of section 1664 of the Code of 1886, requiring a certain consent of stockholders, manifested in a prescribed way, to authorize a pledge of its property by a corporation, was enacted for the protection of the stockholders, and a creditor cannot invoke it. In *Nelson v. Hubbard*, 96 Ala. 251, 11 South. 428, 17 L. R. A. 375, it was held that the provision of the Constitution (article 14, § 6) that "the stock and bonded indebtedness of corporations shall not be increased, except in pursuance of general

laws, nor without the consent of the persons holding the larger amount in value of stock, first obtained at a meeting to be held after 30 days' notice is given in pursuance of law," and that the statutory regulations in reference to the giving of such notice (Code 1886, §§ 1562, 1572, 1664, 1667), are requirements for the benefit of stockholders, and compliance therewith may be waived by them. In delivering the opinion of the court, Walker, J., said: "The view generally accepted by other courts which have had occasion to determine the effect of similar provisions for notice to stockholders of a proposed increase of stock or bonded indebtedness is that the only object of the prescribed notice is to inform the shareholders and to afford them the opportunity of protecting their interests by demanding a compliance with the prescribed formalities. It has accordingly been held that the persons for whose protection the formalities are prescribed may waive a compliance therewith and consent that the corporation be bound by acts informally done. In other words, there can be no complaint by others when the stockholders themselves acquiesce in the disregard of the formalities prescribed for their benefit alone. * * * We think that the acts done in disregard of such formalities, when prescribed, may be avoided at the instance of any stockholder who has not waived the right to raise such an objection. But when all those persons whose interests can be protected by the giving of the prescribed notice deliberately waive the benefit of the provision, all reason for requiring a compliance with it is removed." It may be that a statute prohibiting a corporation from borrowing, except with the consent of the holders of the large part in value of the capital stock expressed in a prescribed manner, is

15 R

especially for the benefit of the stockholders, so that a loan obtained without this consent, if otherwise within the corporate powers, would be capable of ratification by the stockholders.—*Southern, etc., Ass'n v. Casa Grande Stable Co.*, 119 Ala. 181, 24 South. 886. These cases give adequate support to the conclusion which we have reached on this point.

In conclusion, while it may be true that the South & North Alabama Railroad Company had not the power under its original charter to enter into the contract or arrangement relied on by the defendant (a point we do not decide), yet, when we read that charter in connection with the sections of the Code referred to, on the foregoing considerations, the conclusion that that contract or arrangement is intra vires is to our minds irresistible.—*St. Joseph, etc., R. Co. v. St. Louis, etc., R. R. Co.*, 135 Mo. 173, 36 S. W. 602, 33 L. R. A. 607. It follows that the judgment of the city court must be reversed, and a judgment will be here rendered, sustaining the demurrer to the information on the ground indicated in the opinion, and overruling the demurrers to plea 16 as amended and plea 17, and the cause will be remanded.

Reversed and rendered, and remanded.

TYSON, C. J., and SIMPSON and ANDERSON, JJ., concur.